## MRS. CHARLES S. WELLS V. THE TEXAS COAL & OIL COMPANY ET AL.

No. 7893. Decided June 3, 1942.
Rehearing overruled October 21, 1942.
(164 S. W., 2d Series, 660.)

*Will R. Wilson, Turner, Rodgers & Winn,* of Dallas, *John Maxwell* and *Bryan & Maxwell,* all of Waco, for plaintiff in error.

The court erred in holding that there was no evidence adduced on the trial of the case to support the finding of the jury to the effect that the defendants were guilty of negligence or on the issue of discovered peril. Underwood v. Security Life & Annuity Co., 108 Texas 381, 194 S. W. 585; Cartwright v. Canode, 106 Texas 502, 171 S. W. 696.

*Naman, Howell & Boswell,* of Waco, for defendants in error.

The evidence showing the speed of the Wells car was in excess of seventy miles per hour, negligence was established as a matter of law, and there was no fact issue to be submitted to the jury, and defendant's request that the jury be peremptorily instructed to return a verdict for the defendants should have been granted; Schawe v. Leyendacker, 269 S. W. 864; Reilly v. Buster, 125 Texas 323, 82 S. W. (2d) 931; Kooch v. Goodnight, 71 S. W. 927.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court Mrs. Charles S. Wells was awarded damages against The Texas Pacific Coal & Oil Company, O. L. Fletcher and J. H. Jackson, on account of the death of her husband, Charles S. Wells, who lost his life in a collision between an automobile which he was driving and a gasoline truck belonging to Fletcher, a commission salesman for the oil company, and being operated at the time of the collision by Jackson. The case was submitted to a jury upon special issues, all of which were answered favorably to the plaintiff. The special issues covered the primary negligence of the truck driver, the alleged contributory negligence of the deceased and the theory of liability under the doctrince of discovered peril. On appeal the Court of Civil Appeals at Waco held that, as a matter of law, there was no evidence of primary negligence on the part of the truck driver; that the evidence established the contributory negligence of the deceased as a matter of law, and that the evidence raised no issues of discovered peril. Based upon those conclusions the judgment of the trial court was reversed and judgment rendered that the plaintiff take nothing. 151 S. W. (2d) 927.

The accident happened on the Waco-Dallas Highway about three miles south of the town of West. The deceased, Wells, was driving south and the truck driver, Jackson, was driving north. The paved portion of the highway is 20 feet wide. On the west side of the pavement opposite where the collision occurred is located the Hilltop Filling Station. As its name indicates, it is located at the crest of a hill. As the automobile and truck approached each other the automobile turned to its left across the highway and the truck turned to its right and the collision occurred at about the time they reached the righthand or east edge of the pavement.

4

It is the theory of Mrs. Wells that as the two vehicles approached the crest of the hill Jackson, who was driving his truck north up the hill, turned to his left (west) across the highway with the apparent intention of entering the driveway leading to the filling station; that when he reached a point where he could see over the top of the hill he discovered the approaching car driven by Wells and then turned his truck back to his right (east). It is her further theory that as Wells approached the crest of the hill he saw the truck angling across the road in front of him and apparently going into the filling station, and to avoid a collision he applied his brakes and turned his car sharply at an angle of 45 degrees to his left, but about that time Jackson turned back to his right and the collision resulted.

In answer to special issues the jury found that Jackson "turned such truck onto his left side of the highway just before the collision in evidence," which was negligence and a proximate cause of the death of Wells; that the failure of the truck driver to continue on across the highway after he had so turned onto the left side of same was negligence, and a proximate cause of the death of Wells; that the truck driver, after he had turned his truck onto the left side of the highway, then turned same back onto and across the right side of the highway, which was negligence and a proximate cause of the death of Wells; and that the truck driver failed to keep a proper lookout for approaching cars just before he turned his truck onto the left side of the highway, which was negligence and a proximate cause of the death of Wells. It will be observed that each and every act of primary negligence on the part of the truck driver found by the jury was based upon the fact that he turned his truck onto his left side of the highway just before the collision. If there is no evidence of probative value in the record that he turned his truck onto the left side of the highway, then there is no basis for any finding of primary negligence on his part. After carefully considering the record we are well convinced that the Court of Civil Appeals correctly held that the record contains no evidence of probative force that Jackson drove his truck across the center line of the highway.

It is familiar law that negligence is never presumed, and that the mere happening of an accident is no evidence at all of negligence. Phillips v. Citizens National Bank (Com. App.)

15 S. W. (2d) 550; Rankin v. Nash-Texas Co., 129 Texas 396, 105 S. W. (2d) 195.

It is argued that the physical facts established that the truck must have been on the left-hand side of the road immediately before the accident. As we understand the argument the theory is evolved from the following bits of testimony: The overall length of the truck was about 30 feet; the car in which Wells was riding crossed the center line of the pavement 36 feet above where the collision occurred and was traveling at an angle of about 45 degrees across the highway. The place of the point of contact was on the pavement near its east edge; the width of the pavement was 20 feet; the focal point of the blow to the Wells car was on its right side at or near the junction of the right running board with the right front fender, while the focal point of the blow to the truck was on its left side at its left front fender just about at the front wheel. It is argued that a truck of the length of the one here involved could not have struck the car at the point contended for unless that truck itself was moving at such an angle as that its rear end was on the left-hand side of the highway. There is no evidence as to the length of the wheel base of the truck, but only as to its overall length. It may be that the physical facts indicate that the back-end of the truck extended over the center of the line, but it would be the height of speculation and conjecture to conclude from these facts that the wheels of the truck were over on the left-hand side of the highway. The evidence was contradictory and confusing as to the actual point of collision and the car was so demolished that the whole theory is conjectural. But accepting all the statements as to the facts, to conclude therefrom that Jackson drove his truck across the center of the highway would be to base inferences upon inferences. We cannot adopt this theory.

The witness, Ed Machek, testified that he was driving an automobile north on the highway at the time of the accident about 50 or 75 yards behind the truck and at a rate of speed of 45 miles per hour, which was much greater than that at which the truck was being driven. The portion of his testimony which is quoted in the application for writ of error and relied upon as warranting the conclusion that Jackson drove his truck onto the left side of the highway is as follows:

"A. Well, it seemed to me like the truck was going to pull into the filling station, the best I could see of it, and he started

in an angle to go to the filling station and at the same time the V-8—the truck ran on the right hand side of the road almost off the pavement—the truck was going to go across—seemed to me like he was going to go into the filling station and then turned to the right and that is when the collision occurred, right on the righthand side of the road.

"Q. I think probably I understand what you are saying, but I am not sure that it will reflect in the record here that the stenographer is taking—at least the gestures that you make. Do I understand your testimony to be that the truck first turned to its left towards the filling station and then turned back towards the right?

"A. Yes, sir, it looked like it went to pull into the station kind of angling.

"* * * *

"A. It is kind of hard to estimate that. All I know it went off to an angle and then back to the right. I wasn't paying no attention to either one of them. Just happened to see it."

The witness definitely located the point where it seemed to him like the truck was going into the filling station at 200 feet south of the point of collision. According to his testimony the truck was not traveling more than 25 or 30 miles an hour when it seemed to make that bobble. The witness would not testify that the truck or any part of it ever passed over the center line, but testified positively and unequivocally that he could not say that a single wheel of the truck passed over or even touched the black center line of the highway.

Another bit of evidence pointed out in the application and relied on by plaintiff in error is the testimony of Jackson, the truck driver, on cross examination, as follows:

"Q. As a matter of fact, Mr. Jackson, weren't you driving up that hill with your left hand wheels on the center line of the road?

"A. Well, now it might have been on the center of the road. I wouldn't say that I wasn't right upon the center of the road with the left hand wheels, but that is not on the left hand side of the road."

It is argued that, if the left-hand wheels were on or near the center, then when the truck bobbled, as testified by Mashek,

they passed over the center line. The argument assumes that Jackson admits that he might have been driving on the center at the spot where Mashek thought he bobbled. But Jackson testified positively and unequivocally that he never crossed over the center line of the highway, and Mashek would not testify that he did cross over it. If he did so at the place where it seemed to Mashek that he bobbled, then Wells, who was traveling much faster than Jackson, was more than 200 feet north of the point of collision at that time and more than 400 feet from where the truck seemed to bobble.

In order to base liability on this evidence it would be necessary to hold that the jury could infer from it that the truck passed over onto the left-hand side of the highway and then add to that inference the further inference that the reason Wells put on his brakes and suddenly drove or skidded off to the left-hand side of the road was that he saw the truck bobble to the wrong side of the road and back again when he was several hundred feet above the point where he put on his brakes. That would be to permit an inference to be drawn from highly conjectural testimony and then to draw a still further inference from that inference. As stated in the opinion of the Court of Civil Appeals:

"* * * Even though the original presumption be indulged, the law does not permit the pyramiding of one assumption upon another because an ultimate fact thus arrived at is too conjectural and speculative to support a judgment. See Community Natural Gas Co. v. Henley (Tex. Com. App.) 24 S. W. (2d) 10, and cases there cited; also: International Travelers' Ass'n. v. Bettis, 120 Texas 67, 35 S. W. (2d) 1040; Green v. Texas & P. Ry. Co., 125 Texas 168, 81 S. W. (2d) 669."

In an application for writ of error two theories are advanced in support of the argument that the trial court's judgment should be upheld on the doctrine of discovered peril. In developing these theories the application assembles various bits of testimony from the record. We quote from the application as follows:

"Mr. Jackson, the truck driver, testified that immediately before the collision he was driving between 30 and 35 miles an hour; that, driving at that speed and under the circumstances existing on that road at that time and with safety to himself and his truck, he could have stopped that truck by the use of

his brakes in from 20 to 30 feet; that at the time he saw the Wells car it was 150 feet or further from him; that he realized Wells' perilous condition and that he did not apply his brakes and thus use the means at his command to avoid the collision.

"The undisputed evidence already set out establishes that Wells crossed the center line of the road 36 feet from the point of impact and that he was going at a 45 degree angle across the road.

"It is a matter of simple arithmetic that Jackson could have stopped in time to avoid this collision had he applied his brakes.

"Since Wells travelled only 36 feet on the East side of the road and since Jackson was at least 150 feet from Wells when Wells made the turn, it becomes evident that Jackson was at least 114 feet from the place of impact at the time he discovered Wells' peril. Therefore, giving him twice the estimated distance required to stop, if Jackson had stopped in 60 feet from the place where he saw Wells, Jackson would have been, at the very last, 54 feet from the place of impact and at a dead stop.

"So Wells would have passed at least 54 feet in front of Jackson and onto the shoulder of the road and possibly into the level field and the accident most certainly would not have happened."

As is apparent from a consideration of that theory, it is based upon the assumption that the truck traveled 114 feet while the automobile travelled 36 feet. By the uncontradicted testimony in the record the automobile was traveling at a very high rate of speed and the truck at a much less rate. The record clearly does not support that theory of discovered peril.

The next theory will not be set out in full, but we think it sufficient to state that it is based upon the premise that the truck driver came up the hill angling to his left across the highway, a fact not supported by the record, as above set out. We are in agreement with the conclusion of the Court of Civil Appeals that the judgment of the trial court cannot be affirmed on the ground of discovered peril.

The opinion of the Court of Civil Appeals further holds that, as a matter of law, the negligence of the deceased was a

contributing cause of his death. Since we have held that there is no evidence of primary negligence, it becomes unnecessary for us to consider the question of the contributory negligence of the deceased.

Defendants in error advance various explanations why the deceased suddenly put on his brakes and steered his car to the lefthand side of the road, but we need not evaluate any of such explanations or theories. The burden rested upon the plaintiff to establish by competent evidence that the collision was brought about through the negligence of the truck driver and she having wholly failed to discharge that burden, the question need not be pursued further.

The judgment of the Court of Civil Appeals, which reversed and rendered the case, is affirmed.

Opinion adopted by the Supreme Court June 3, 1942.

Rehearing overruled October 21, 1942.