COMET MOTOR FREIGHT LINES, Inc., et al. v. HOLMES et al.

No. 2582.

Court of Civil Appeals of Texas. Eastland.

May 23, 1947.

Rehearing Denied June 20, 1947.

J. A. Gooch, and Cantey, Hanger, Mc-Mahon, McKnight & Johnson, of Fort Worth, for appellants.

Bouldin & Bouldin, of Mineral Wells, for appellees.

GRISSOM, Chief Justice.

Mrs. Grace Holmes, for herself and her minor daughter, filed this suit against Homer Crabb and the Comet Motor Freight Lines, Inc., to recover damages caused by the killing of Benton Holmes, the husband and father, respectively, of plaintiffs. On a former trial, judgment was rendered for plaintiffs, defendants appealed, and the Court of Civil Appeals at Waco reversed the judgment and remanded the cause. (See 175 S.W.2d 464.) It held that the evidence was insufficient to sustain the implied findings of the trial court.

On the second trial, the case was submitted to a jury, and it found (1A) that the truck driven by Crabb collided with Holmes; (1) that as Crabb approached the Holmes' truck he failed to keep a proper lookout for persons and vehicles using the highway; (2) that such failure was negligence, and (3) the proximate cause of the death of Holmes.

Special Issue No. 1B was: "Do you find from a preponderance of the evidence that said collision, if any, by the said Homer Crabb, while so driving and operating said truck was negligence?" The jury found that the "collision" was negligence and, (in answer to Issue 1C,) that "such negligence" was a proximate cause of the death of Holmes.

(Issue 1B did not submit any specific act of negligence alleged by plaintiffs but asked only whether the "collision" was negligence. It was objected to for said reason. The objection should have been sustained. There was no pleading justifying the submission of the case under the res ipsa loquitur doctrine. The answers to Issue 1B and 1C constitute no proper support for the judgment rendered.)

The jury found that Crabb was not operating his truck at an excessive rate of speed and that he had his truck under proper control as he approached Holmes. It found that plaintiffs had been damaged in the sum of $20,000.00. Judgment was rendered for said amount, and defendants have appealed.

The substance of appellants' First Point is that the evidence was insufficient to support a finding that Crabb was guilty of any act of negligence which could have been a proximate cause of the death of Holmes.

Appellee's witness, Strickel, testified that on January 11, 1942, about 12:30 p.m., Holmes was standing off the pavement at the northeast corner of his gasoline truck, which was parked about a foot off of the west side of a paved highway running north and south between Perrin and Mineral Wells. Holmes' truck was facing south; both Holmes and his truck were off of the paved portion of the highway and nothing appeared to be wrong with him. Strickel testified that he was going South toward Mineral Wells and before he saw Holmes he had passed three Comet trucks going south between said towns; that while he was following the Comet trucks he was

traveling "around fifty" miles an hour; that when he passed the three Comet trucks he was traveling "sixty or a little better;" that from the north, after passing the Comet trucks, the view was open and unobstructed and he could see Holmes' truck from a distance of three-fourths of a mile; that he traveled about a mile after he passed the Comet trucks before he reached Holmes' truck; that the last time he saw the Comet trucks they were 200 to 300 feet north of the Holmes truck; that he did not remember seeing any vehicle on the highway from the time he passed the Comet trucks until he reached Mineral Wells, except the Holmes' truck; that he did not hit Holmes. He testified that the Comet trucks were "swerving to and fro" and he saw them "cross the black center line sometimes," and that he followed the trucks from Perrin for six or seven miles before passing them. It is not clear from his testimony where he saw the Comet trucks "swerving to and fro" and "crossing the black center line sometimes." It cannot be ascertained from his testimony whether the Comet trucks were being so driven during the six or seven miles he followed them, or when he last saw them 200 to 300 feet north of Benton Holmes' truck.

Chester Lewis, a witness for plaintiffs, testified that on January 11, he was driving a truck for Comet Motor Freight Lines, Inc., that three of the Comet trucks, driven by its employees, left Wichita Falls that morning; that Homer Crabb was driving the first of said trucks, Chester Lewis the second, and Richardson the third. That they maintained that position until they reached the Holmes' truck about noon; that they stayed at least 100 yards apart; that as they approached the Holmes' truck he (Lewis) was driving his truck 100 yards or more behind the truck driven by Crabb; that he saw Crabb as he (Lewis) went by Benton Holmes; that he saw Holmes as he approached the Holmes' truck; that Holmes was lying in front of his truck with his head toward the Holmes' truck; that Holmes was lying parallel to the road; that he saw Holmes when he (Lewis) was 75 to 100 yards from Holmes' oil truck, that he saw Crabb's truck as Crabb passed the Holmes' truck; that Crabb passed Holmes' truck, went about 100 yards and "pulled off to the right." Lewis testified that he "just barely got past the (Holmes') truck and pulled off the road and stopped * * *, when he (Crabb) pulled off and stopped"; that Lewis stopped between Crabb's truck and Holmes' truck; that a car (apparently Strickel's) passed the Comet trucks going in the direction of Holmes about half a mile north of the place where Holmes was found dead, or dying. That there was no obstruction between Lewis' truck and Holmes' truck, except Crabb's truck, as they approached the place where Holmes' truck was parked; that he did not see any other vehicle, except the Holmes' truck, after Strickel's car passed the Comet trucks and went on toward Mineral Wells. Lewis tesified he had been in sight of the Crabb truck from the time they left Wichita Falls until they got to Benton Holmes' truck, except when going around a curve; that there was no obstruction and you could see the Holmes truck for 300 or 400 yards "if it hadn't been for Crabb's truck * * *." He was asked how wide the pavement was at the place where Holmes' truck was parked, and answered: "I think 20 feet on each side." He testified that the road at said place was just about level; that south of the Benton Holmes truck, going toward Mineral Wells, the view was open and unobstructed for half a mile. He further tesified:

"Q. About how far was Mr. Crabb's truck south of Benton Holmes' truck when you first saw Mr. Holmes? A. He had just passed.

"Q. He had just passed? And you saw Benton Holmes immediately; and you had never seen him before? A. No, sir.

"Q. Now, Mr. Lewis, was there anything to prevent a man driving a truck from seeing a man laying out on that highway? A. I don't think so.

"Q. If Mr. Crabb was driving down there just ahead of you, was there anything to prevent Mr. Crabb from seeing Benton Holmes lying on that road? A. I don't think so.

"Q. You saw him from a distance north? A. Yes.

"Q. Did you ever make a test with reference to seeing a hat on the highway? A. Yes.

"Q. About how far could you see a hat? A. About three or four hundred yards."

He testified that when he stopped his truck and went back to where Holmes was, that Holmes' face was bleeding and "his stomach was all torn open;" that Holmes never spoke; that he was apparently lifeless.

On cross-examination, Lewis testified that the speedometer on his truck was broken but the Comet trucks were traveling around forty miles an hour; that before the Comet trucks got to Holmes, someone (apparently Strickel) passed the Comet trucks "going at a pretty good clip," passing all three of the Comet trucks at once. He further testified:

"Q. Did you see the gasoline truck as— at the time Homer Crabb passed it? A. I didn't just at the time, but maybe a little bit after he passed.

"Q. Was it on the highway or on the shoulder? A. It was just about the edge.

"Q. How did Homer go past it? A. He pulled over on the left to the center of the road to pass.

"Q. Did you see the instant he passed this gasoline truck? A. Yes.

"Q. Did Homer Crabb hit Mr. Holmes? A. I didn't see him.

"Q. You had him in view at the time he went around the truck? A. Yes.

"Q. After Homer passed the truck, you say you saw Holmes lying in front of his truck? A. Yes.

"Q. I believe you say Homer pulled down past Benton Holmes and you came up and parked there and all three went back to see if you could do anything for him? A. Yes."

On the same day Homer Crabb made a statement to the police at Mineral Wells, a few miles from the place Holmes was killed. There was no evidence that there was blood on Crabb's truck or anything about the truck indicating that Crabb struck Holmes. Whether or not either his truck or Strickel's car was inspected is not shown. Crabb's statement was as follows:

"I was driving south on Highway 281, in a Comet Line truck, and at a point about 12 miles north of Mineral Wells, I saw a truck, a gasoline truck, parked on the right side of the road, about a foot from the pavement. I went on by the truck, about seventy five yards when I heard a truck behind me throw on its air brakes, and turn off the road to the right. I then stopped my truck in about twenty feet and went back to the scene where the gasoline truck was stopped. I saw a man laying in the road in front of his truck about five or six feet. He was on the pavement, but was barely on the pavement.

"I saw a black Ford, that looked pretty new, and looked to be a fourdoor car, about three or four hundred yards in front of me when I passed the car. I did not see the man in the road when I passed by, nor did I see him anywhere around the truck. I did not feel any bump or jar of any kind, or hear any noise of any kind as I passed the gasoline truck. There was some clothing strewn down the road from where the body was. This happened on the 11th day of January, 1942."

Crabb was a party defendant. He did not testify. Plaintiff introduced the following portion of his statement in evidence against Crabb; it was not admitted in evidence against the Comet Lines: "I was driving south on Highway 281, in a Comet Line truck, and at a point about 12 miles north of Mineral Wells, I saw a truck, a gasoline truck, parked on the right side of the road, about a foot from the pavement, I went on by the truck about seventy five yards * * *. I then stopped my truck in about twenty feet and went back to the scene where the gasoline truck was stopped. I saw a man laying in the road in front of his truck about five or six feet. He was on the pavement but was barely on the pavement. * * * I did not see the man in the road when I passed by, nor did I see him anywhere around the truck. * * * There was some clothing strewn down the road from where the body was. This happened on the 11th day of January, 1942."

The defendants introduced the following portion of Crabb's statement: "* * * when I heard a truck behind me, throw on its air brakes, and turn off the road to

the right. * * * I saw a black Ford, that looked pretty new, and looked to be a fourdoor car, about three or four hundred yards in front of me when I passed the car. * * * I did not feel any bump or jar of any kind, or hear any noise of any kind as I passed the gasoline truck. * * * "

The foregoing is the substance of all of the testimony introduced in the trial of the case which could have any bearing on the questions as to whether or not Homer Crabb killed Benton Holmes, and, if so, whether or not he did any act which could constitute negligence and which might be a proximate cause of Holmes' death.

 "For injury or damage which has resulted from his conduct the individual is held to have been responsible where it appears that he ought to have foreseen and prevented the injurious occurrence." 5 Tex.Jur. 664.

"In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission." 5 Tex.Jur. 665.

"A state of facts in which the cause of the accident cannot be found does not warrant a conclusion that one rather than the other, produced it. We cannot presume in favor of one and against the other. Evidence must be brought by a plaintiff, having the burden of proof, sufficient to justify an inference of negligence on the part of the defendant, and none such can be drawn from an occurrence which, while indicating negligence somewhere, is as consistent with the hypothesis that it was his own or that of one in whose right he sues, as that it was that of the other party." 30 Tex.Jur. 806.

"In view of the fact that the burden of proof is on the plaintiff, such circumstances must be ample and must appear from the evidence. Moreover, the evidence must not leave the causal connection more than consistent with plaintiff's theory as to how the accident occurred. Where the proof of causal connection is equally balanced, or the facts are as consistent with one theory as with another, plaintiff has not met the burden the law casts upon him." 38 Am. Jur. 1034.

 Both negligence and proximate cause may, of course, be proved by circumstantial as well as direct evidence, but before an inference of either negligence or proximate cause may be drawn, it is required that such inference rest upon facts or circumstances proved and not upon another inference or presumption.

What does the evidence disclose that the driver of the first Comet truck (Homer Crabb), whose negligence plaintiffs charge caused the death of Holmes, failed to do or did that he should or should not have done that caused Holmes' death? The jury found that as Crabb approached Holmes, Crabb was not driving at an excessive rate of speed and that he had his truck under proper control. The only evidence as to Crabb's action as he approached the Holmes' truck that is here material is that as Crabb's truck approached Holmes' truck Crabb pulled his truck to his left to the center of the road to go around the truck of Holmes. This evidence comes from plaintiff's witness and is not disputed. Where does the evidence disclose that Holmes was at said time that tends to prove that Crabb was not then keeping a proper lookout? Plaintiffs' witness, Lewis, was in a position where, if at said time Holmes was on the highway, he could have seen him. Lewis testified that he did not see Holmes until after Crabb's truck had passed the Holmes' truck. The only direct evidence as to the position of Holmes with reference to the highway is that of plaintiffs' witness, Strickel, who testified that very soon before Holmes was found dead he was standing off the pavement at the rear of his truck. Where Holmes was immediately before he was struck by Crabb, if he was, whether at the front or rear of his truck or beneath it, is a matter of pure guess and conjecture. If Holmes had remained at the place where the witness, Strickel, testified he last saw him, there is nothing in the record that tends to show that he would have been struck by Crabb's truck, since Crabb, according to plaintiffs' evidence as he approached the Holmes' truck, pulled to his left and to the center of the highway for the purpose of passing

the Holmes' truck. There is no evidence in the record that Crabb drove close to the rear of the Holmes' truck or close to its side. Plaintiffs' evidence in this respect is only that as Crabb approached the Holmes' truck he pulled over to his left and to the center of the highway to pass. See Pritchard v. Henry, Tex.Civ.App., 200 S.W.2d 651, 653.

Neither negligence nor proximate cause can be established by mere proof of the happening of the tragic accident under the circumstances here disclosed.

"A jury cannot find that a person failed to exercise ordinary care under the circumstances existing at a certain time when the evidence does not disclose what the circumstances were." Turner v. Texas Co., 138 Tex. 380, 385, 159 S.W.2d 112, 116.

In Texas & N. O. Ry. Co., v. Warden, 125 Tex. 193, 200, 78 S.W.2d 164, 168, the Supreme Court of Texas quoted from an opinion of the Supreme Court of the United States, as follows: "Nobody saw the accident; no one can say with fair certainty how it occurred. Consistently with the facts disclosed, it might have happened in one of several ways and without causal negligence by the petitioner."

Under a comparable fact situation, our Supreme Court, in Texas & P. Ry. Co., v. Shoemaker, 98 Tex. 451, 455, 84 S.W. 1049, 1051, said: " * * * the failure to keep a proper lookout * * * could only be deemed the proximate cause of the deaths when it appeared that the keeping of it would have prevented the unfortunate occurrence, and no inference of this fact can be drawn from the evidence. What were the boys doing as the train approached them? How long were they on the track before they were struck? What was their position? An answer to these questions must be found before it can be said that there was a failure to keep a proper lookout, and that such a lookout would have discovered them in danger in time to have enabled those controlling the train to have saved them; and for such answer the evidence may be searched in vain. This fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself."

Appellants seek to supply the lack of proof by pointing to the fact that Crabb, who was an employee of the Comet Lines when Holmes was killed, and who is its codefendant, was not called to testify. A presumption that Crabb's testimony would be favorable to appellees does not relieve them from the burden of proving their case. Such a presumption does not arise until the party upon whom the burden of proof rests has made a prima facie case. Turner v. Texas Co., 138 Tex. 380, 387; 159 S.W. 2d 112; Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 456, 84 S.W. 1049.

The questions suggested in the Shoemaker case are pertinent here. What was Holmes doing as Crabb approached? If Holmes was on the paved highway as Crabb passed Holmes' truck, how long had he been there? What was his position immediately before he was struck by Crabb, if he was? An answer to these questions cannot be found in the testimony. How then can the jury say that Crabb failed to keep a proper lookout and that such failure was negligence and a proximate cause of the collision?

After a very thorough study and consideration of the evidence, we conclude that the finding of negligence and proximate cause rest upon nothing more substantial than guess and conjecture. See Benson v. Missouri, K. & T. Ry. Co., Tex.Civ. App., 200 S.W.2d 233, 241. We are, therefore, constrained to hold that the evidence is insufficient to support the verdict. Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660, 661, 663; Doggett v. Peek, 5 Cir., 116 F.2d 273, 274; Nash v. Raun, 3 Cir., 149 F.2d 885, 888; Paris & G. N. Ry. Co., v. Stafford, Tex.Com.App., 53 S.W.2d 1019, 1022; Emmons v. Texas & Pacific Ry. Co., Tex.Civ.App., 149 S.W.2d 167, 170.

The judgment is reversed and judgment rendered for appellants.