## CASSTEVENS v. CHILDRE et ux.

### No. 2702.

Court of Civil Appeals of Texas. Eastland.

Feb. 4, 1949.

Rehearing Denied March 4, 1949.

C. O. McMillan, of Stephenville, for appellant.

Chas. Nordyke, of Stephenville, for appellees.

COLLINGS, Justice.

This suit was brought by L. H. Childre and wife against William Casstevens, charging negligence on the part of appellant Casstevens in driving his automobile so as to strike and kill their minor son, Eston Childre. From a judgment in the trial court against the appellant in the sum of $4,200, this appeal is brought.

The tragedy occurred near midnight on November 29, 1947. The deceased was last seen walking north out of Stephenville along the right-of-way of Highway No. 281 toward the home of his parents, plaintiffs herein, who lived about four miles out of town. Appellant and three companions, another boy and two girls, had been to a dance and were returning home. Appellant was driving his car south toward Stephenville, a short distance north of an overpass on the highway in question, when something struck or was struck by his car. It is evident that the object struck was the body of Eston Childre, deceased, who was thereby killed.

Two grounds of negligence were submitted to and found by the jury:

(1) That appellant was driving his car on his left hand side of the road; that such action was negligence, and a proximate cause of the car striking and killing Eston Childre.

(2) That appellant failed to keep a proper lookout; that such conduct was negligence and a proximate cause of the car striking and killing Eston Childre.

Appellant contends in points one and two that the trial court erred in submitting the above grounds of negligence and proximate cause to the jury and in rendering judgment thereon because the evidence was not sufficient to support an affirmative finding on such issues.

All the testimony came from witnesses offered by appellees. Appellant offered no testimony. There was no direct testimony that appellant was driving on his left side of the road or that he was failing to keep a proper lookout. The only evidence on either of these points was circumstantial—that is, there was testimony as to the existence of other facts from which we are asked to infer that appellant was driving his car on the wrong side of the road and that he was failing to keep a proper lookout.

Miss Dorothy Whitehorn, who was riding in the car with appellant, testified:

"Q. A short distance north of the overpass did you know whether or not anything struck the side of that automobile? A. We knew that something struck the car as we were driving along.

"Q. Were you riding in the front seat? A. Yes, sir, I was.

"Q. Was Mr. Casstevens' headlights burning? A. Yes.

"Q. Do you recall whether that was a moonlight night—do you recall whether the moon was shining that night—was it bright moonlight or not? A. I think the moon was shining.

"Q. Do you recall ever looking down the highway that night to see whether you could see down the highway or not? A. I don't remember just exactly looking down the highway if I could see—I didn't—I don't know that I looked down there with the thought in mind.

"Q. If it had been dark down that way and no lights you could have detected that? A. You mean if the car hadn't had lights?

"Q. Yes. A. Yes, sir.

"Q. You said you knew something struck the car—that was a short distance north of the overpass? A. Yes, sir.

"Q. You didn't know what it was? A. No.

"Q. Before you struck it you did not see anything in the highway ahead of you? A. No.

"Q. What did you do—what was done about it after you recognized something had struck the car? A. After something struck the car we stopped and turned around and went back to see what we could see.

"Q. Did you see anything when you got back? A. No, sir.

"Q. Did you get out of the car before you struck the—I mean, before you turned around and went back? A. Yes, sir, we did.

"Q. Did you make any examination as to the car—the fenders or door? A. We noticed that the handle of the door was gone."

T. E. Seay, a Texas Ranger, who investigated the accident, testified in substance:

"I found a big dent in the left front fender and rear view mirror—you know how they stick out—it was pressed back against the body of the car and the door was bent and the door glass was crushed or shattered and the door handle torn completely off. * * * I found part of the handle myself."

"I had occasion also to observe the bodily injury of this boy. (Childre boy). I found * * * in my opinion the boy had been struck here on the leg * * * his left leg * * * by the front fender. * * The thigh bone was broken * * * entirely in two. * * * He had an injury above the right eye and the top back of his head and I believe that is all the injuries I knew of * * *"

Nath McInroe, a deputy sheriff of Erath County, testified:

"Q. What side of the highway was that body on? A. On the east side or the right hand side going toward Morgan Mill—it would be on the left hand side coming toward Stephenville.

"Q. With reference to the gravel shoulder and paved section to—how far was this body where the nearest part of it to the paved section—the paved edge? A. It is nine feet from the edge of the hot top to the grass line on the shoulder of the road, and the head of the body was laying on the gravel and the shoulders were just flush with the grass line and the head was laying out on the gravel.

"Q. In other words, his shoulders—(interrupted). A. His shoulders just came even with the grass line and the head was laying on the edge of the gravel and it was nine feet from the edge of the grass to the edge of the hot top road—the shoulder is nine feet wide out there or three steps which is approximately nine feet."

"Q. Did you find any part of an automobile out there? A. Yes, sir.

"Q. What? A. Found a door handle about the middle of the shoulder of the road.

"Q. On the east side? A. On the east side. * * * I found the handle and turned the handle over to Mr. Tully Seay—the handle I found was twenty steps south of the body, the big part of the handle, and there was about an inch and a half of the small end of the handle broken off which was seven steps down from the body between the body and the big handle * *"

"Q. Nath, you just found the one spot of blood on the highway? A. Yes, sir.

"Q. Evidently the body just remained where it had fallen when it came down to the ground—you found no sliding? A. I didn't find any skid place.

"Q. Of course, an object striking an automobile, being thrown into the air might just fall into one spot—that is true, isn't it? A. It could do it.

"Q. You didn't find where he had been brushed or slid along the road? A. No, sir.

"Q. You couldn't say where some person struck the side of an automobile how far that body would be knocked or thrown from the point of impact, could you? A. No, I don't know.

"Q. It would depend on the speed of the automobile, the weight and the weight

of the body and all those things? A. I would think so.

"Q. But anyway, this body just lay there without any skid marks—hadn't been slid or anything of that kind? A. It didn't show to have been slid.

"Q. You found no gravel ground into the skin? A. That is right."

In addition to the above and other like testimony, there was evidence concerning tracks on the highway. The witness Seay testified as follows:

"Q. Off of the paved section of the highway near where the body was on the gravel shoulder, did you see some automobile tracks over there? A. Yes, sir. * * I saw some tracks coming from the west side of the highway at an angle—I would say fifty yards—angle across the highway to very close to where the boy's body was found, and then on the south side of the body on the gravel shoulder there were tracks where a car had evidently been going north on the gravel and came up nearly to the body and then spun its wheels and turned around and came back toward town—whose they were, I don't know."

No witness attempted to say or could say whether these tracks were made before or after the collision. Mr. Seay further testified that at the time he observed the tracks in question, several cars had arrived at the scene, including the police car and the ambulance in addition to the car of the witness Horace Simmons who had found the body. Simmons testified that at about midnight, while riding with his wife and another couple, he "pulled off the side of the road to turn around" and saw the body of the deceased about fifty feet away; that he did not get out of the car at the time, did not see any other car tracks, but could tell that the Childre boy was dead. He then turned around, went back to town, informed the officers of what he had found and came back with the officers in their car.

There is no testimony as to the kind or character of the tires on appellant's car, nor was there evidence concerning the tracks which would in any way connect them with the tires of appellant's car. The evidence fails to establish that any of the tracks found were the tracks of the car which collided with and caused the death of the Childre boy. The testimony concerning tracks is of no probative value on the issues mentioned.

From the evidence it is impossible to say just how the accident occurred. Where the deceased was at the time he was struck, and whether appellant's automobile was driven on the left side of the road or not, are matters of pure conjecture. In order to find that appellant was driving his car on his left side of the highway, there must be an inference that he was so driving, based upon another inference that the body of the deceased could not have been thrown to the place where it was found if it had been struck on appellant's right hand side of the highway. It is well settled that an inference of negligence or proximate cause must rest upon facts or circumstances proved, and not upon another inference or presumption. Comet Motor Freight Lines, Inc., v. Holmes, et al., Tex.Civ.App. 203 S.W.2d 233; Texas & N. O. R. Co. v. Warden, 125 Tex. 193, 78 S.W.2d 164; Atchison, T. & S. F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Wells v. Texas Pac. Coal & Oil Co. et al., 140 Tex. 2, 164 S.W.2d 660. The evidence is insufficient to support a finding that appellant was driving his car on his left side of the highway.

The only evidence as to the failure of appellant to keep a proper lookout is that it was a clear moonlight night; that the road was not obstructed, and that the head lights of his automobile were burning. The record is silent as to where the deceased was and what he was doing immediately prior to the collision. This is not sufficient to support the finding of the jury that appellant failed to keep a proper lookout. Rankin et al. v. Nash-Texas Co. et al., 129 Tex. 396, 105 S.W.2d 195; Phillips v. Citizens' Nat. Bank et al., Tex.Com.App., 15 S.W.2d 550; Comet Motor Freight Lines, Inc., v. Holmes, supra.

For the reasons stated, the judgment of the trial court in favor of appellees is reversed and judgment here rendered in favor of appellant.