**CASSTEVENS v. CHILDRE et ux.**

No. 2841.

Court of Civil Appeals of Texas.
Eastland.

Dec. 1, 1950.

Rehearing Denied Jan. 12, 1951.

C. O. McMillan, Stephenville, for appellant.

Charles Nordyke, Stephenville, for appellees.

GRISSOM, Chief Justice.

L. H. Childre and wife sued William Casstevens for damages caused by the killing of their son, Eston Childre. Judgment was rendered for plaintiffs and Casstevens has appealed.

The jury found that Casstevens was driving his automobile to his left of the center of the highway immediately preceding the striking of Eston Childre and that this was negligence and a proximate cause of Casstevens' automobile striking and killing Eston Childre. The jury also found that Casstevens failed to keep a proper lookout for those using the highway immediately preceding the striking of Childre and that such failure was negligence and a proximate cause of the striking of Childre.

The substance of appellant's first four points is that the evidence is insufficient to authorize the submission of the said issues to the jury and insufficient to support their findings.

This is the second appeal of this case. See Casstevens v. Childre, Tex.Civ.App.,

217 S.W.2d 884 and Id., Tex.Sup., 224 S. W.2d 461.

In order to determine whether or not the evidence is sufficient to sustain said findings we shall attempt to state the testimony relevant to said issues in the light most favorable to the findings, as we are required to do. On the night of November 29, 1947, William Casstevens and a young lady, now his wife, and another boy and girl, went from Stephenville north on U. S. Highway 281 past the place where said highway crosses over the railroad tracks to a place in the country where there was a party. They went in appellant's maroon car. Mrs. Casstevens places the scene of the party off the highway on a dirt road two, three or four miles north of Stephenville. She testified to the following: She and appellant and another boy and girl left the party about 11:30 P.M. for Stephenville. "Q. It is kind of a white hill top country out there, is that right? A. Yes, sir." Two or three hundred yards north of the overpass on said highway something struck the Casstevens car; Casstevens drove on a short distance, turned around and went back to a point where they thought something struck the car; all occupants of the car got out but found nothing; they then learned the left door handle had been broken off. The group then went on to Stephenville. The evidence shows that the "something" that struck Casstevens' car, put a dent in its left front fender, bent the left rear view mirror back against the side of the automobile, crushed the glass on its left hand door and knocked off the left door handle.

That night, Horace Simmons was driving out of Stephenville on the same highway "around 12:00 o'clock P.M." As he turned around he saw Childre's body 15 or 20 feet away. This was north of the overpass. Simmons returned to Stephenville, looked for officers and found policemen McCoy and McInroe "across the river" at a cafe and told them about finding the body. This was before 12:00 o'clock. Simmons followed Mr. McInroe and Mr. McCoy back to where he had seen the body; when he returned, Childre's body was in the same position as when he first saw it.

This highway runs north from Stephenville to Mineral Wells. The pavement is 22 feet wide with a stripe down the center; the graveled portion of the highway on the east side is 9 feet wide. Grass grows to the east side of the graveled portion of the highway. Childre's body was found in the locality where Casstevens says something struck his automobile. When the body was found the head was toward the west and the feet were towards the east. The head was on the graveled portion of the highway with the shoulders along the line marked by the grass that grows up to the gravel. From the center of the paved portion of the highway to the dead boy's head would be at least 19 feet. In other words, the east half of the pavement was 11 feet wide and the graveled portion of the highway on the east was 9 feet wide and the deceased's head was on this graveled portion. There was no sign that Childre's body skidded or was dragged or pushed across any portion of the highway. There was no blood on the highway, except at the point where the body was found.

Texas Ranger Seay testified that when he got to the body that only policemen McCoy and McInroe and the ambulance driver were there; that he made an investigation of automobile tracks near the body; that the tracks were very plain; that when he drove up, his "lights shined on a slight incline beyond the boy's body and you could see car tracks coming down the highway directly down towards the point where this boy's body was lying." He testified that these automobile tracks came from the north; that they approached the body from the west side of the highway, angling across it; that they began angling far to the north of the body; that the appearance of these tracks was caused by the dust; that you could see it in the beam of the lights across the highway; that he had made a lot of investigations of car tracks; that a car coming off a country dirt road of a "white dusty nature on to a black paved road will leave a kind of white dusty track." That such a track would fol-

low the car for some distance; that there was only one set of tracks; that he saw these tracks angling down to just about the spot where the boy's body lay, just a little to the south of the boy's body.

The crushed glass of the left door of Casstevens' car, with human hair and skin embedded in it, was sent to a laboratory and compared with hair taken from the deceased's head and it "matched exactly." Childre's thigh was completely broken and there were cuts and bruises on both the front and back of his head. Casstevens' car was a "maroon" color. There was "red" paint on the deceased's clothing, particularly at the point where the thigh was broken and deceased's trousers were broken by the force of the impact.

The time and place of the accident coincide with the testimony of appellant relative to the time and place something struck his automobile while he and his companions were returning from the party. The circumstances mentioned, particularly the red paint on the deceased's trousers and jacket and the deceased's hair in the crushed glass of Casstevens' left door, lead inevitably to the conclusion that Childre was killed by Casstevens' car.

The witness Nachtigall saw Eston Childre walking north of the overpass along this highway, on the east side of the paved portion, about 11:25 P.M. Childre's body was discovered by Simmons and he returned to Stephenville, found the officers and reported to them about five minutes before 12:00 o'clock. The overpass is about 1½ to 2 miles north of Stephenville. He was traveling at a "good gait," walking straight, not wobbling, stumbling or swaying. There was evidence that he had been working that day; that he did not drink; that he was in good health. Apparently, he had been to a picture show and had started walking north along the east side of the paved portion of the highway toward his home. He was seen at this point about the time appellant and his wife say they left the party and drove directly back to Stephenville. The evidence tends to show that Childre was neither drunk, nor sick, nor afflicted in any manner that might cause him to walk against, or into the path of, an automobile going down its right hand side of the highway with its light burning.

Appellant did not testify nor present any evidence on the first trial. On this trial his wife was called to testify by the appellees and appellant took the stand and testified in his own behalf. He was asked whether before something struck his automobile he was looking down the highway in front of him. He answered, "A. Well, I am quite sure I was looking down the highway. I don't know exactly what I was looking for." He was asked if he knew how fast he was driving and he answered, "No, sir. Not for sure." He further testified:

"A. I would judge between forty and forty-five miles an hour.

"Q. State whether or not you knew exactly where you were on the highway. A. No, sir, not exactly.

"Q. State whether or not you were on the paved portion of the highway. A. Yes, sir, I was.

"Q. On the highway? A. Yes, sir.

"Q. Can you give the Jury your best judgment as to where you were? A. Well, I was on the right hand side close to the center of the highway would be my best judgment.

"Q. What are you basing your judgment on in that? A. Well, the way I normally drive, the usual way.

* * * * * *

"Q. And you presumed you were on the right hand side of the road because you usually drive that way? A. Yes.

* * * * * *

"Q. But as far as being able to put your finger right down and saying that you were doing this, and know what you were doing, you don't know, do you? A. No, sir."

The circumstantial evidence introduced leads inevitably to the conclusion that Casstevens' automobile struck and killed Eston Childre. We conclude, after a most careful study of the entire statement of facts, that the circumstantial evidence introduced sustains the further con-

clusion that when Childre was struck Casstevens was driving on his left hand side of the highway. There is evidence tending to show, among other things, the following: The left front fender of Casstevens' car struck the inside of Childre's left thigh and broke it; that Childre's body then struck the left rear view mirror of Casstevens' car, bending it back against the car; that Childre's body continued forward (not bouncing away from the car) and his head struck and crushed the left glass door, leaving hair and skin embedded in the glass. Under the circumstances, it is difficult to believe that Childre's body was hurled through the air, not dragging or bleeding on the highway, a distance of 19 to 25 feet. There was no sign of the body having slid on the highway. There was no blood except where the body was found, at the edge of the left graveled part of the highway. "It looked like it might have fallen out there." Childre was seen, a few minutes before his body was found, walking north along his right hand side of the paved portion of the highway near the spot where his body was discovered. The two pieces of the left door handle were in the middle of the graveled portion of the highway and south of the body. The middle of the gravel would be 15½ feet left of the center stripe on the highway. One set of car tracks angled from the north across to the east to just south of the body. Casstevens drove from the place of the party down a dirt road to this paved highway; this was in a "white hill top country." A car coming off a dirt road of a "white dusty nature on to a black paved road will leave a kind of a white dusty track." That track would follow the car for some distance. These tracks were "very plain" to Mr. Seay as he drove up with his lights shining on a slight incline. In Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635, 636, the court said: "The plaintiff was not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon her the burden of establishing her case beyond a reasonable doubt. She was only required to convince the jury by a fair preponderance of the

evidence that the accident resulted from the negligence of the defendant. While it is true, as held by the Court of Civil Appeals, that in order to show that defendant's negligence was the proximate cause of the injury the evidence must present something more than mere conjecture or surmise, it is equally true that the cause of an accident may be inferred from circumstances. Both negligence and proximate cause may be established by circumstantial evidence." See Burlington-Rock Island R. Co. v. Ellison et al., 140 Tex. 353, 167 S.W.2d 723, 726, and Missouri-Kansas-Texas R. Co. of Texas v. Sanderson, Tex. Civ.App., 174 S.W.2d 646 (R.W.M.).

We hold that the evidence is sufficient to sustain the findings of the jury.

 Appellant's sixth and seventh points are that the court erred in refusing to declare a mistrial and in failing to grant a new trial because of questions asked appellant on cross-examination. The record discloses that while appellant was on the witness stand he was asked if he was arrested and he answered that he was not. Appellee's counsel then asked "Never tried?" Whereupon appellant's counsel stated, "We would object to anything about a trial." Appellee's counsel stated, "It would be admissible, Your Honor, on this. They are identical happenings." The Court: "Go ahead." Appellee's counsel: "You were tried in this particular instance for failing to stop and render aid to Eston Childre." Whereupon, appellee's counsel stated, "At this time, Your Honor, we make the objection that the evidence of a trial on criminal prosecution is not admissible, and it is improper cross-examination. We ask that this be declared a mistrial and the proceeding end right here." The court overruled the motion for a mistrial, whereupon, appellant's counsel asked the court to instruct the jury not to consider the question or answer. Thereupon, the court stated to the jury, "Gentlemen of the Jury, what has been said up to this time, concerning this matter, you will not consider for any purpose during any of the deliberations in this case." Whereupon, appellant's counsel excepted to the line of questioning and the court's overruling his mo-

tion for a mistrial. The record simply shows that the only questions objected to were appellee's question, "Never tried?" and "You were tried in this particular instance for failing to stop and render aid to Eston Childre." As to said questions, the jury was instructed not to consider same for any purpose. There was no answer to either of the questions objected to. The questions were improper. Kennedy v. International, G. & N. O. R. Co., Tex.Com. App., 1 S.W.2d 581; Texas & N. O. Ry. Co. v. Parry, Tex.Com.App., 12 S.W.2d 997; Cooper v. Irvin, Tex.Civ.App., 110 S. W.2d 1226, 1229. However, the questions were not answered. There was no evidence before the jury that appellant had been tried for failing to stop and render aid to Eston Childre and the jury was instructed by the court not to consider the questions. Appellant testified he had never been arrested. The jury likely concluded that if he had never been arrested he had not been tried for a crime. The mere asking of the questions was not reasonably calculated to cause the rendition of an improper judgment. Texas Power & Light Co. v. Hering, Tex.Sup., 224 S.W.2d 191, 192; American National Bank v. Shepherd, Tex.Civ.App., 175 S.W.2d 626, 628. Said points are overruled.

The judgment is affirmed.