**FIRESTONE TIRE & RUBBER CO. et al.
v. RHODES.**

No. 10115.

Court of Civil Appeals of Texas.
Austin.

March 18, 1953.

Critz, Kuykendall, Bauknight & Stevenson, by F. L. Kuykendall, all of Austin, for appellants Firestone Tire & Rubber Co. and Clarence R. Enis.

Strasburger, Price, Kelton, Miller & Martin, by Hobert Price, all of Dallas, for appellants John Bremond Co. & Marvin L. Buck.

Alvis & Carssow, by Wm. B. Carssow and C. E. Alvis, Jr., Austin, for appellee.

ARCHER, Chief Justice.

W. B. Rhodes, appellee herein, brought this suit against The Firestone Tire & Rubber Company and one of its employees, Clarence E. Enis, and against John Bremond Company and one of its employees, Marvin L. Buck, for personal injuries sustained by Mrs. Rhodes and for damages to the Rhodes' car.

The charge submitted to the jury consisted of 96 special issues. On the 2nd day of May, 1952, the jury returned its verdict in favor of plaintiff.

The appellants, The Firestone Tire & Rubber Company and Clarence R. Enis, filed three motions asking (1) that the trial court disregard the answers to certain special issues and to render a judgment non obstante veredicto as to these appellants; (2) that the court declare a mistrial because of conflicting answers, and (3) that if judgment be rendered against them they have judgment of indemnity over and against the defendants, John Bremond Company and Marvin L. Buck. These motions were overruled and refused by the trial court and on the 31st day of May, 1952, a judgment in the sum of $11,041.45 was rendered and entered against all of the defendants, jointly and severally, to which action these appellants excepted. These appellants, in due time, filed their motion for a new trial, which motion was overruled on the 18th day of July, 1952, to which action of the court these appellants excepted and gave notice of appeal.

Appellants John Bremond Company and Marvin L. Buck duly filed and presented their motions for a new trial which were overruled, to which they excepted and gave notice of appeal.

The appeal of Firestone and Enis is based on three points assigned as error and are:

### First Point

The trial court erred in overruling and refusing appellants' motion to disregard the answers of the jury to Special Issues Nos. 4, 5, 6, 7, 8 and 9, and to render judgment non obstante veredicto, and to render judgment that plaintiff take nothing as to these appellants.

### Second Point

The trial court erred in failing and refusing to grant appellants' motion for a mistrial based upon conflicting answers of the jury to Special Issues Nos. 4 to 9 inclusive with the answers to Special Issues Nos. 72 to 75, inclusive.

### Third Point

The trial court erred in refusing to allow appellants, The Firestone Tire & Rubber Company and Clarence R. Enis, indemnity over and against John Bremond Company and Marvin L. Buck, for such amounts as these appellants might pay to appellee under and by virtue of the judgment rendered herein.

We believe that the trial court should have granted appellants Firestone's and Enis' motion to disregard the answers of the jury to Special Issues Nos. 4, 5, 6, 7 and 9 and should have rendered a judgment non obstante veredicto and rendered judgment that plaintiff take nothing as to these appellants.

Special Issue No. 4 inquired if the driver of the Firestone Truck failed to maintain proper control of his vehicle at the time and on the occasion in question. The jury's answer was "yes."

In response to Special Issue No. 5 the jury found that such failure to maintain proper control was negligence and further found that such negligence was a proximate cause of the damages.

Special Issue No. 7 inquired if the driver of the Firestone truck failed to maintain a proper lookout, and the jury found that such driver did so fail, and that such failure was negligence and was a proximate cause of the damages.

It appears from undisputed facts that Mrs. W. B. Rhodes, wife of appellee, was driving her car north on Congress Avenue in the lane next to the center stripe, and when she was about 12 feet north of the end of the bridge her car was struck by the Firestone truck being operated by Enis, and that immediately before the collision, the Firestone truck and the Bremond truck had come in contact with each other.

In his pleadings appellee alleged numerous acts of negligence on the part of the drivers of both trucks.

By their pleadings Firestone and Enis admitted that the Firestone truck did cross the center line of the street and strike the Rhodes car. They alleged that just before the collision the Firestone truck was being driven south on Congress Avenue in the lane next to the center line of the street; that just before such collision the Bremond truck crossed over into the lane in which the Firestone truck was traveling and struck the Firestone truck causing it to swerve to the left into the lane in which the Rhodes car was traveling and hit the car.

The appellants Firestone and Enis contend that the collision of Firestone's truck and the Rhodes car was caused solely by the Bremond truck crossing over into the lane in which the Firestone truck was traveling and striking the Firestone truck and causing it to swerve into the lane in which the Rhodes car was traveling.

The appellants Firestone and Enis contend as a matter of law there is no evidence to support the jury's finding that Enis failed to keep a proper lookout and maintain proper control, and that even if he did so fail, such failure could not be the proximate cause of the collision of his truck with the Rhodes car, and that they were entitled to a take nothing judgment.

The jury found that Enis was not operating his truck at an excessive rate of speed; that Enis failed to maintain proper control; that such failure was negligence and a proximate cause; that Enis failed to keep a proper lookout; that such failure was negligence and a proximate cause; that Enis failed to keep his truck on his right-hand side, but such failure was not negligence; that Enis failed to keep his truck within the lane in which he was driving, but that such failure was not negligence; that Enis was not driving too close to the Bremond truck; that Enis failed to turn his truck to the right to avoid the collision but such failure was not negligence; that Enis was not attempting to pass the Bremond truck, and that the collision was not solely caused by the manner in which the Firestone truck was being driven; that Enis, driver of the Firestone truck, did not fail to let the driver of the Bremond truck pass, and was not trying to beat the Bremond truck onto the bridge; that Enis failed to apply his brakes, but such failure was not negligence.

As regarding the driver of the Bremond truck, the jury found that he was not driving at an excessive rate of speed; that he failed to maintain proper control, that such failure was negligence and a proximate cause; that he failed to keep a proper lookout, and that such failure was negligence and a proximate cause; that he failed to keep his truck within the lane in which he was traveling and such failure was negligence and a proximate cause; that he was driving too close to the Firestone truck, and that such driving was negligence and a proximate cause; that he failed to turn to the right, that such failure was negligence and a proximate cause; that the driver of Bremond's truck allowed his truck to swerve into the traffic lane in which the Firestone truck was being driven and struck the Firestone truck, and thereby caused Firestone's truck to swerve into the lane in which the Rhodes car was traveling, that such action was negligence and a proximate cause of the collision; the jury further found that Buck, the driver of Bremond's truck, immediately before the collision of the Firestone truck and the Rhodes car, was attempting to pass the Firestone truck, that such was not being made under safe conditions and was negligence and a proximate cause of Firestone's truck striking the Rhodes car; the driver of the Bremond truck was found by the jury to have driven his truck into the lane in which the Firestone truck was traveling without ascertaining that he could do as with safety, and that such driving was negligence and a proximate cause.

Enis testified that he had been driving a truck for Firestone for nine years and prior to that was a truck driver for Red Arrow Freight Lines for seven years; that on the morning of the accident he was driving south on Congress Avenue after crossing First Street toward the bridge in the west traffic lane next to the center line of the street, and was watching the oncoming traffic.

The witness said he did not see the Bremond truck until it hit him on the right front fender and wheel, and knocked the steering wheel out of his hand and caused his truck to go across the line into the Rhodes car; that his truck after being hit went round and wound down on the bridge and stopped against Mrs. Wood's car. The witness further testified that after the Bremond truck hit the right front wheel of his truck and turned it to the left that he did not have time to regain control of his truck, and that from the time his truck was hit by the Bremond truck until he came in contact with the Rhodes car not over two seconds passed. That at all times he was watching the movement of traffic.

The witness testified that after the collision he could not guide his truck.

On cross-examination by attorney for Bremond, Enis testified that he never saw the Bremond truck until it hit him and at that time the Bremond truck was alongside him. That he did not attempt to pass the Bremond truck or pull to his right.

Mr. Buck, driver of the Bremond truck, by deposition testified that on the 7th of October, 1949, the date of the accident, he had started with a load of groceries to Fredericksburg and that just after he had crossed First Street on Congress Avenue his truck was alongside the Firestone truck, and just afterwards he pulled ahead of the Firestone truck and the rear part of the Bremond truck over the dual wheels was caught by the Firestone truck on the front fender; that the body of the Bremond truck was over about 4 inches out of line and extended eastward; that it was possible that he crowded the Firestone truck a little so as to get on the bridge, that there was less than 6 inches between the two trucks. That at the time he started to pass the Firestone truck the driver thereof showed signs of picking up his speed. Buck also testified orally on the trial of the case similar as in the deposition.

■ We are unable to find substantial evidence that Enis did not have complete control of his truck until it was struck by the Bremond truck, and there is no testimony that Enis did anything that a person of ordinary care could or would not have done under the same or similar circumstances. He had proper control, in

any event, until his truck was struck by the Bremond truck, and up to that time he was not negligent in failing to have proper control.

■ The testimony is that about two seconds of time elapsed between the time the Firestone truck was hit by the Bremond truck and the collision of the Firestone truck with the Rhodes car, and we do not believe that failure to regain control in that time could as a matter of law be negligence. During this brief period of time Enis did not have an opportunity to regain control, stop his truck or change its course to avoid striking the Rhodes car. Renner v. National Biscuit Company, Tex.Civ.App., 173 S.W.2d 332 (writ ref. w. o. m.); Triangle Cab Co. v. Taylor, Tex.Civ.App., 190 S.W.2d 755, affirmed 144 Tex. 568, 192 S.W.2d 143.

■ It is possible that Enis could have avoided the collision if he had anticipated that the Bremond truck would negligently be driven into his truck, but one is not bound to anticipate negligent conduct on the part of another. Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112.

■ We do not believe that the evidence raised the issue of the failure of Enis to keep a proper lookout.

No one other than Enis testified as to the lookout being kept by him. We have hereinabove given a summary of the evidence concerning the activity of Enis as he approached the scene of the collision and at the scene of the accident.

■ The fact that a collision occurs does not establish negligence or proximate cause.

Even if Enis had not kept a proper lookout or had not maintained proper control of the truck he was operating, and as we have stated, there is no sufficient evidence that he did so fail, such failure would not constitute proximate cause of the collision standing alone.

■ In order for the failure of one to keep a proper lookout and proper control to constitute proximate cause of a collision it must appear that such failure, independent of any other cause in a natural and continuous sequence, produced the collision, and that such collision would not have occurred except for the failure to maintain proper control and a proper lookout. Then too, that such person should have foreseen or anticipated that some other agency would strike the vehicle being operated and cause it to turn or veer and collide with some other person or object. Comet Motor Freight Lines, Inc. v. Holmes, Tex.Civ.App., 203 S.W.2d 233 (error ref. n. r. e.).

■ We recognize that ordinarily whether an act of negligence is a proximate cause of a collision, but such negligence in certain instances may not, as a matter of law, be the proximate cause. There must be more than a scintilla of evidence to justify the court in leaving the case to the jury. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; San Antonio & A. P. R. Co., v. Behne, Tex.Com.App., 231 S. W. 354; East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613.

■ We conclude that the trial court erred in overruling and refusing the motion of appellants Firestone and Enis to disregard the answers of the jury to special issues Nos. 4 to 9 inclusive, and to render judgment for these appellants.

Appellants John Bremond and Marvin L. Buck base their appeal on two points as follows:

### "First Point

"The error of the trial court in permitting the witness Fisher, a policeman of the City of Austin, to testify that when he went down to the scene of the accident he talked to Mr. Buck, the driver of the John Bremond Company truck and Mr. Buck told him that he had swerved his truck into The Firestone truck, over the objection of the Bremond Company; that such testimony was not res gestae and that said truck driver Buck had no authority to make any admissions against the Bremond Company. (Germane to Assignment of Error No. 1, based on Paragraph No. 23, Motion for New Trial, Tr. 152).

"Second Point

"The error of the trial court in permitting plaintiff's witness, Dr. Bailey, to testify that Mrs. Rhodes might vomit for a year or it might last ten years, after he admitted that he could not testify with reasonable certainty on the subject, all this over the objection of the John Bremond Company and Marvin L. Buck that it was speculative and conjectural and was not based upon reasonable certainties or probabilities. (Germane to Assignment of Error No. 2, based on Paragraph No. 26, Motion for New Trial, Tr. 156)."

We do not believe that the court was in error in the admission of the testimony of witness Fisher in view of all the attendant circumstances in connection therewith.

The testimony, the admission of which complaint is made, was in connection with evidence given by the witness as to a statement made to the witness, who was a policeman, by appellant Buck.

Questions were directed to Fisher by an attorney for Firestone, one of which inquired if Buck did not tell Fisher that he, Fisher, swerved into the Firestone truck. An objection was made and there followed statements by counsel and the court concerning such statement and as to the authority of Buck to bind Bremond, but the witness did not answer the question. If we concede the question was improper, it was not answered.

An unanswered question, although improper and duly excepted to, is not sufficient grounds for a reversal of the case. El Paso Electric Co. v. Whitenack, Tex. Civ.App., 297 S.W. 258, affirmed, Tex. Com.App., 1 S.W.2d 594; Brazos River Conservation and Reclamation Dist. v. Costello, Tex.Civ.App., 169 S.W.2d 977 (error ref. w. o. m.).

We do not believe that the testimony given by Dr. Bailey was speculative or conjectural. Portions of such testimony was not objected to and no request was made to the court to instruct the jury not to consider other facts of such testimony; and similar testimony was admitted without objection.

Dr. Bailey was the only physician to testify in the case and objections were directed to a question concerning the length of time Mrs. Rhodes would continue to vomit, and after several efforts on the part of plaintiff's counsel to put a question and objections made by counsel for all defendants, a portion, to which no objection was lodged, reads:

"Q. (By Mr. Carssow) Dr. Bailey, let me ask you this, Mrs. Rhodes called to see you professionally a number of times since your hospitalization? A. Yes, sir.

"Q. And you have had a chance to confer with her? A. Yes, sir.

"Q. Has she complained of continuous vomiting? A. Yes, sir, she has vomited some ever since then, the history she gives me.

"Q. How do you account in your opinion for that continued vomiting at this late stage? A. Well, if the vomiting is due to the mental trauma or the nervousness which she may have as a result of this accident, why, it would, could—it is possible that it still would produce the pylorospasm from this nervous tension. Some people may have that for years after that.

"Q. It could continue for several years? A. Yes, sir."

Further questions and answers were given, to wit:

"Q. (By Mr. Carssow) Do you remember the question, Dr. Bailey? A. Would you state it again now, and let me get started again?

"Q. I will try. Dr. Bailey, will you state to the Jury as to whether you are able to state with reasonable certainty or reasonable probabilities as to whether Mrs. Rhodes will continue to suffer from this vomiting and from this—what is the medical term? A. Pylorospasm.

"Q. Pylorospasm? A. I can't state with reasonable certainty that

she will continue vomiting, and for the same reason I wouldn't be able to state that she will not vomit. This is something that the individuals, I don't know whether—what you all have brought out before, but these individuals may go for several weeks without vomiting, and then when they get under a little more tension or a little more worry or remember back something that has—in the past which has happened, may start this contraction and may start the vomiting again, and I know of no way of telling for sure whether she will or whether she will not vomit, whether it will last one year or whether it will last ten years.

\* \* \* \* \* \*

"Q. In your opinion, from the case history which you have from your meetings with Mrs. Rhodes and your visits to the office—her visits to your office, state what in your opinion was the cause of this vomiting and other ailments that you have described to the Jury? A. I think that they—those were the result of the accident.

"Q. Doctor, in your opinion, has she been continuously nervous since October 7? A. She has been quite nervous each time I have seen her.

"Q. Is the condition in which you found her at the time reasonably calculated to cause anxiety and worry? A. Yes, sir.

\* \* \* \* \* \*

"Q. Well, you referred to a mental trauma. That is what I am talking about when I ask you about—you have given the Jury that as your diagnosis. Let me ask you then, is this condition in which you found her, which I believe you described as a result of a mental trauma, is it such that is is reasonably calculated to cause her to worry and have nervousness and nervous spells and vomiting and so forth? A. I think that is reasonable."

On cross-examination of Dr. Bailey by Mr. Kelton, Bremond Company's counsel, he gave this testimony:

"Q. Is there any reason that when this lawsuit is off her mind and things, do you understand, of that kind, that she should not, if she keeps work like this, is there any reason that she shouldn't go along and rapidly improve to total recovery? A. I will answer your question like I did Mr. Carssow, that she might and she might not."

We believe that the testimony of Dr. Bailey, as a whole, was limited to the nature and extent of Mrs. Rhodes' present injuries and that such testimony may not be fairly construed as conjectural or speculative. Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Tex. 73, 15 S.W. 556; Kimbell v. Noel, Tex.Civ.App., 228 S.W.2d 980, error rev. n. r. e.; Novita Oil Co. v. Smith, Tex.Civ.App., 247 S.W.2d 151.

The judgment of the trial court is reversed and rendered in favor of Firestone Tire & Rubber Company and Clarence R. Enis, and that the appellee take nothing as to these appellants, otherwise the judgment of the trial court is affirmed.

Reversed and rendered in part and in part affirmed.