EAST TEXAS THEATERS, INCORPORATED, V. H. T. SWINK.

No. 8168. Decided January 19, 1944.
Rehearing overruled February 16, 1944.
(177 S. W., 2d Series, 195.)

*Norman, Stone & Norman,* of Jacksonville and Rusk, and *Shook & Shook,* of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that there was sufficient evidence to authorize the submission of the issue of discovered peril and to support a finding thereon. Dallas Ry. & Ter. Co. v. Bishop, 153 S. W. (2d) 298; Ball v. Youngblood, 252 S. W. 872; Cantu v. South Texas Transportation Co., 110 S. W. (2d) 995.

*Frank Devereaux, Jr.,* of Dallas, and *Guinn & Guinn,* of Rusk, for respondent.

All the necessary elements of discovered peril were submitted to the jury which answered adversely to the defendant, and it was not error for the Court of Civil Appeals to hold the evidence sufficient to authorize its submission. Montgomery v. Houston Elec. Co., 135 Texas 538; 144 S. W. (2d) 251; Hayes v. Gainesville St. Ry. Co. 70 Texas 602, 8 S. W. 491; Texas Motor Coaches v. Palmer, 132 Texas 77, 121 S. W. (2d) 323.

MR. JUDGE SLATTON, of the Commission of Appeals, delivered the opinion for the Court.

H. T. Swink recovered a judgment against East Texas Theaters, Inc., for personal injuries. The judgment was affirmed by the Texarkana Court of Civil Appeals, Mr. Justice Hall dissenting. 173 S. W. (2d) 224. The jury, among others, made the following findings:

"Special Issue No. 14:

"Do you find from a preponderane of the evidence that the defendant, its agents and employees knew of the existence of the pit or opening in the floor of the stage of the Palace Theater?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing Special Issue 'Yes,' then and only in that event, answer the following Issue:

"Special Issue No. 15:

"Do you find from a preponderance of the evidence that Billy Fallin, employee of the defendant, knew of the position of H. T. Swink, plaintiff, just prior to the time H. T. Swink fell into the pit or opening in the stage floor, realized that H. T. Swink was in a dangerous position by reason of said pit or opening in the floor, and failed to advise H. T. Swink of the existence of said pit or opening in the floor of the stage?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing Special Issues 'Yes,' then and only in that event answer the following Issues.

"Special Issue No. 16:

"Do you find from a preponderance of the evidence that the failure of Billy Fallin to advise H. T. Swink, Plaintiff, of the existence of the pit and of the existence of the dangerous position of H. T. Swink, if you have so found was negligence?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing Special Issue 'Yes,' then and only in that event answer the following Issue:

"Special Issue No. 17:

"Do you find from a preponderance of the evidence that the failure of Billy Fallin to advise H. T. Swink, dangerous position of H. T. Swink, if you have so found, was a proximate cause of the fall of H. T. Swink?

"Answer 'Yes' or 'No.'

"Answer: Yes."

"Special Issue No. 23:

"Do you find from a preponderance of the evidence that the Plaintiff H. T. Swink, in jumping on the runway and attempting to cross to the stage before the rear door of the theater was opened was an act which a person of ordinary prudence, in the exercise of ordinary care, would not have done under the same or similar circumstances at the time?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing Issue 'Yes,' then and only in that event answer the following Issue:

"Special Issue No. 24:

"Do you find from a preponderance of the evidence that the Plaintiff, H. T. Swink, in jumping on the runway and attempting to cross the stage before the rear door of the theater was opened, if you have so found, was a proximate cause of the fall of the Plaintiff, H. T. Swink?

"Answer 'Yes' or 'No.'

"Answer: Yes."

It is the contention of the petitioner that the pleadings and proof do not raise the issue of discovered peril and that the issues quoted (Nos. 14, 15, 16 and 17) do not embrace the theory of discovered peril in that the vital issue of time, i. e., the issue as to whether the employee of petitioner discovered the perilous position of Swink in time to have prevented his fall by the use of all the means at hand was never submitted to the jury, hence the trial court should have rendered a judgment in favor of petitioner upon the findings of the jury, which convicted Swink of contributory negligence.

A careful consideration of the trial pleadings of Swink leads to the conclusion that the only issues tendered were acts charged to be primary negligence. In a pleading designated "Plaintiff's First Supplemental Petition" it is charged:

"* * * the defendant's agents and employees did not warn the plaintiff of the existence of the open pit into which he may fall if said plaintiff continued the course of walking from the front of the building to the rear of the building and that therefore, said defendant was negligent in failing to advise plaintiff of the existence of said open pit in line of plaintiff's travel, and even though the plaintiff was then and at that time in a dangerous position, defendant did nothing to warn the plaintiff of the danger, which danger was well known to the defendant's agent and employees and which danger could well have been avoided by the defendant's agent and employee warning the plaintiff of the danger or by conducting the plaintiff along the East or left aisle of the theater and nevertheless, said acts and conduct, both singly and jointly were negligence and which negligence proximately caused the injuries to the plaintiff as alleged in the original petition."

It is apparent that the vital and essential elements of the theory of discovered peril are not charged in the quoted averments of Swink in at least one important particular, viz,. that the employee of petitioner discovered the perilous position of Swink in time to have averted the fall and resultant injury.

In the case of Baker v. Shafter, (Com. App.) 231 S. W. 349, loc. cit. 350, it is said:

"The doctrine of discovered peril involves three elements, viz: (1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendant's agents of his perilous situation in time to have averted—by the use of all the means at their command, commensurate with their own safety-injury to him; and (3) the failure thereafter to use such means. To invoke the doctrine of discovered peril, it must be pleaded. Stewart v. Portland, etc., Ry. Co., 58 Or. 377, 114 Pac. 936."

Neither do the issue (Nos. 14 to 17, inclusive) contain a finding that the injured party's dangerous position was discovered by the employee of the theater in time, by the use of the means at hand, to prevent the fall and resultant injury.

In passing upon the sufficiency of the evidence to raise the issue of discovered peril we quote the following evidence, which in our opinion is all of the evidence in the record bearing upon that question:

"After my conversation with Mr. Tanner, me and the boy went through the picture show and came to the stage. It was

pretty high up and the Fallin boy jumped up and I said, 'Is that the only way to get up'? He said, 'Can't you jump up there?' I said 'Yes' and thought I would follow in his tracks, but I didn't I fell in there.

"As to whether, or not, he answered me, he said, 'We can make it all right,' which I thought I could follow him, but I didn't do a good job. After I jumped upon the stage, I didn't go very far. I couldn't see. I did not follow him. I started to go and fell.

"Billy gave me no information as to the location of the pit prior to the time I fell into the pit. He gave me no warning to look out for the pit.

"Billie Fallin never gave me any direction to take, that is, another route, so as to go up the steps on it, east or to the left side of the theater building. I asked him why we couldn't go that way and he said that we could get up this way.

"I told him there was no light and he said that we could make it. He jumped upon the stage and I said, 'Is there any other way to get up?' and he said that we could make it and he did and I went up and fell.

"As to how I knew there was a stage there, he said 'We have to jump up.' The Fallin boy said that. I was against the stage and asked him if there was some other way to get up and he said, 'No.' I could feel the stage. It was three and a half or four feet high.

"I asked him about turning on the lights and he said 'We could make it.' I don't know that he was in the act of opening the door when I fell."

"Billy Fallin's testimony:

"Q. When did you first learn, if you did learn, that Mr. Swink was in the theater?
"A. Well, I was either at the door or nearly to the door and I heard him say that—I believe he made the remark that—did he have to do that. I believe that was the statement he made.
"Q. Do you know what he had reference to?
"A. I think he had reference to the fact that I had jumped up on the runway and I think he meant did he have to do that."

As to the distance from the edge of the runway to the door that he went to unfasten:

"I imagine it is around between 8 and 10 feet; something like that. Don't imagine over 10 feet.

    *    *    *    *    *    *

"A. It is a double door."

"Q. When did you first learn that Mr. Swink had fallen?

"A There was another kid in the show, a young boy. He came up and told me that he had fallen. He was between Mr. Fink and myself; he was following me.

\* \* \* \* \* \*

"A. I believe he fell before the door was opened.

"Q. Did you hear him say anything or was there anything about his falling that attracted your attention?

"A. No, sir.

"Q. You heard Mr. Swink when he said—'Do I have to do that?' when you jumped up on the runway, didn't you?

"A. Yes, sir.

"Q. Did you turn around then and answer his question?

"A. No, sir, I didn't say a thing. I was nearly to the door and went right on to the door.

"Q. You didn't stop and tell him he had better be careful because he might fall in the pit, did you, Mr. Fallin?

"A. No, sir.

Q. Did you tell him to wait until you got the door open?

"A. No, sir.

"Q. You knew it was Mr. Swink, did you not?

"A. Yes, sir.

"Q. You knew at that time that he was following you down through the theater building?

"A. Yes, sir.

"Q. And that was before he had jumped from the floor of the audience to the top of the runway?

"A. Yes, sir.

"Q. You didn't see him jump up on the top of the runway, did you?

"A. No, sir.

"Q. At the time Mr. Swink made the statement to you 'if he would have to do that,' did it occur to you that he would get up on the stage and run right into the orchestra pit?

"A. No, sir."

■ We are of the opinion that the evidence quoted does not raise the theory of discovered peril. The act of Swink in jumping on the runway and attempting to cross the stage before the rear door of the theater was opened, was found by the jury to be negligence on the part of Swink and a proximate cause of his injury. In order to raise the issue of discovered peril a new duty on the part of the employee of the petitioner must arise whereby the perilous position of Swink must have been discovered by the employee in time for the employee to be able, by the use of the means at hand, to avert the fall. According to

the evidence, the act of jumping on to the stage and the fall of Swink was one continuous act. Therefore, it is evident that no time remained for the discovery of the perilous position of Swink within time sufficient for the employee of petitioner to avert the fall. The testimony of Swink goes no further than to raise issues of primary negligence. The gist of Fallin's testimony is that Mr. Swink had jumped and fallen into the pit before he knew that he was going to jump. How, then, can it be said, under the evidence, that Swink was in a perilous position and that the employee of petitioner discovered his perilous position in time, by the use of the means at hand, to avert the fall and resultant injury? We have no hesitance in determining that the evidence does not raise the issue of discovered peril. Texas & P. Ry. Co. v. Breadow, 90 Texas 26, 36 S. W. 410; Texas & Pacific Coal & Oil Co. v. Wells, 140 Texas 2, 164 S. W. (2d) 660; Baker v. Shafter, supra.

It is contended by the respondent that the evidence does not raise the issue of contributory negligence. We are in accord with the holding of the Court of Civil Appeals with respect to this phase of the case.

■ Since under the jury verdict the petitioner was convicted of primary negligence and the respondent Swink was also convicted of contributory negligence, the judgment of the trial court should have been in favor of the petitioner. The petitioner filed a motion for judgment on the verdict in the trial court and complained that this motion was overruled in the trial court, the Court of Civil Appeals and in this court. It follows that the judgment rendered in favor of Swink by the trial court, which was affirmed by the Court of Civil Appeals, should be reversed, and that judgment should be here rendered upon the jury verdict that Swink take nothing and pay all costs. It is so ordered.

Opinion adopted by the Supreme Court January 19, 1944.

Rehearing overruled February 16, 1944.