## POSEY v. SCHUHMACHER CO.
### No. 11996.

Court of Civil Appeals of Texas. .Galveston.

May 27, 1948.

Rehearing Denied June 17, 1948.

Stewart, Burgess & Morris, W. Carloss Morris, Jr., and Sam W. Mintz, all of Houston, for appellant.

Thos. M. Phillips, of Houston (Baker, Botts, Andrews & Parish, of Houston, of counsel), for appellee.

GRAVES, Justice.

This was a damage suit, brought by appellant, Marcus L. Posey, against appellee, The Schuhmacher Company, to recover for personal injuries sustained by him, growing out of a collision between a truck driven by appellant, and a car owned by appellee, but driven by its employee, Mrs. Eloise Weems. A trial upon the merits before a jury, upon special-issues, resulted in a verdict and judgment for appellee.

Appellant has raised some eight points-of-error, which, when condenced and edited, resolve themselves into three principal contentions:

1. That the evidence raised issues as to the discovered peril of appellant by appellee's driver, which should have been submitted to the jury;

2. That the jury's findings in answer to Special-Issues 7 and 15 were in conflict, and without support in the evidence;

3. That appellant's motion for continuance was improperly overruled.

Appellant not only properly plead the elements of the doctrine of discovered peril, as being applicable to the cause-of-action he declared-upon, but he further, after the development of all the testimony before the jury, requested the court to submit, substantially, these special-issues-of-fact as having been raised by his pleadings and testimony, as a basis for the application of such doctrine to this cause, to-wit:

"No. 9. Do you find from a preponderance of the evidence that the plaintiff and the truck which he was driving were in a position of peril immediately prior to the collision in question and at a time when the driver of defendant's automobile could have avoided the collision?

"No. 10. Do you find from a preponderance of the evidence that the driver of the defendant's automobile discovered and realized the perilous position, if any, of plaintiff and plaintiff's truck in time so that, by the exercise of ordinary care upon her part, and with the means at hand and in safety to herself and the automobile she was driving she could have avoided the collision?

"No. 11. Do you find from a preponderance of the evidence that the driver of defendant's automobile, after the discovery and realization, if any, of the perilous position, if any, of plaintiff and his truck,

200

failed to exercise ordinary care in the use of the means at hand consistent with the safety of herself and the car she was driving to avoid the collision?

"No. 12. Do you find from a preponderance of the evidence that such failure, if any, you have found, was a proximate cause, as that term has been defined to you, of the collision in question and the damages and injuries, if any, resulting therefrom?"

The trial court refused submission of any of his tendered issues, which action, as indicated, forms the basis of appellant's first point-of-error in this Court.

After a careful review of the record, this Court concludes that the trial court erred in not submitting the quoted inquiries, in that issues-of-fact were raised by the evidence under each and all of them.

On some of the material features attending or related to the mishap, the evidence was undisputed, and these may—in brief substance—be summarized, in this way:

The collision occurred on Winkler Drive, in Houston, between 4:00 P.M. and 5:00 P.M. on the 2nd day of May, 1946; appellant was proceeding in a southeasterly direction on such Winkler Drive, and appellee's agent was driving appellee's car in the opposite direction thereon; the weather was dry and clear; there was a wide shoulder to the right of the road in the direction in which Mrs. Eloise Weems, appellee's agent, was traveling.

There were also a number of photographs taken by each side, and these were severally introduced by each of them, and appear in the statement-of-facts as their respective exhibits.

An examination of them, however, does not disclose any material discrepancies between what they show and the general facts recited, supra, to have been indisputably established.

There then appeared this further detailed testimony from the only other eyewitnesses than the appellant to the accident, to-wit: Mrs. Eloise B. Weems, the appellee's witness and driver, and Mr. B. R. Hart, the witness for the appellant:

Mrs. Weems: "Well, the best I recall, I was driving along in back of these cars, not very fast, and so I would meet a car occasionally, and all at once, I looked up and I saw this truck coming, and just as it approached toward me, I saw it swerve toward my side, and I made a remark to myself, 'that crazy fool is fixing to run into me', and I immediately removed my foot from the gas accelerator, and I pulled to the side and slowed up as much as I could, and before I got all the way off, I was in this collision, and naturally then I lost control of the car and tried to stop it, but not having any brakes, I didn't have any luck until I saw this ditch, and I pulled my emergency brakes, and I stopped the car just before it went down into the ditch. * * *

"Q. Tell the jury, if you will, as best you know, where your car was with reference to the highway at the time this accident took place? A. I was on my right-hand side of the road, I think most of my car was off of the pavement.

"Q. And why had you gotten your car over there? A. I saw this truck coming, I was trying to avoid being hit."

Mrs. Weems's testimony, on cross-examination:

"Q. I believe you stated you were turning off of the highway because you saw this truck coming, would you say you saw that truck for about a block away? A. No, sir.

"Q. Not that far away? A. No, sir.

"Q. Would you say about half a block away? A. I imagine it was.

"Q. At that time, did it appear to you that truck was totally on your side of the highway, or a little on your side of the highway? A. He swerved in all of a sudden, I wouldn't say how far away he was from me when he started coming toward me.

"Q. When he was half a block away, you think he was completely on his side of the highway? A. I do not know.

"Q. Would it have been possible for him to have been on your side of the highway half a block away from you? A. I wouldn't know.

"Q. Now, can you tell us any reason at this time why you didn't turn in toward the shoulder and didn't continue on the

shoulder when you saw this truck coming on the wrong side? A. No sir.

"Q. You can't think of any reason why you didn't at this time? A. No, sir."

B. R. Hart testified as follows:

"Q. Now, Mr. Hart, will you tell me in your own words and as fully as you can just what you saw at the time this accident took place? A. Well, yes, sir; I was following the cars, the woman a'driving, and the road's low on the right hand side, four or five inches lower than the—the shoulder is lower than the pavement. She ran off of that and dropped her right hand wheel off of it and she pulled it back on the road. Well, she cut across the road and hit that truck.

"Q. What portion of the truck did she strike? A. The back wheel on the left hand side.

"Q. Do you know what portion of the wheel she struck? A. No sir; she went into the side of it, into the wheel and bed —of course—part of the bed. One part of the bed.

"Q. Do you know what damage was caused to that maroon automobile? A. No, sir; the left hand front part of it was smashed in pretty bad, all I noticed—wasn't too much damage on it.

"Q. Did you notice anything unusual about the damage that was done to the front part of that maroon automobile? A. I didn't pay particular attention to the car.

"Q. How far was this maroon car from Posey's dump truck when she started heading toward her right? A. When she started heading to the right?

"Q. Yes, sir. A. She was off the road on the right and then she turned back on the road and she come on the left.

"Q. Well, had she been off the road on the right? A. Yes, sir.

"Q. For how long? A. Right front wheels—just a short distance.

"Q. When had she first turned off to the right? A. Well, she was just a short distance from the time she pulled back on the road.

"Q. Well, now, that is what I am asking you about, Mr. Hart. You understand you were there and we weren't. We are just trying to get your best recollection. A. Well, you can't just feet and inches and driving at forty-five miles an hour.

"Q. Of course, you can't exactly, but you can do it approximately, can't you, Mr. Hart? A. You know about how long it takes you to get off the road and pull back on.

"Q. Is that what happened? A. Yes, sir.

"Q. Well, now, about how far was this maroon automobile— A. Well,—

"Q. —from Mr. Posey's truck when she got off the road? A. Well, they couldn't have been very far apart, if any, because when she pulled back on the road and cut too far to the left is when she hit the truck.

"Q. Now, when she cut back to her left, of course, she was headed right straight for the truck, wasn't she? A. At an angle towards it.

"Q. And how far was she when she started cutting back from the truck, was she from the truck? A. She was right at it.

"Q. Well, was she still in front of the truck? A. No, sir; she wasn't in front of the truck. At the time she cut—she was cutting and she missed the front end of the truck and hit the back end with the car."

It is concluded that the testimony here, as so detailed, differentiates this cause on the facts from those cited and relied upon by the appellee, wherein it is held that no right-of-action arising out of discovered peril was raised by the evidence, one of the main ones being that of Phoenix Refining Co. v. Morgan, Tex.Civ.App., 178 S.W.2d 175, writ of error ref., W. M., by this Court.

The difference between the Morgan case, et omne genus, and the one at bar, is that the time-element, which our Supreme Court declared in cases like Northern Texas Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41, and Parks v. Airline Motor Coaches, Tex.Sup., 193 S.W.2d 967, is the exacting, crucial, and vital issue, is that, in each of them, it was mathematically

found *on the facts* that the time after the discovery of the peril was too short for any possible avoidance of the accident; whereas here, a decidedly different picture was presented, as the recited evidence has shown, to-wit:

In this instance it was made plain—indeed, obvious—that appellant's driver, Mrs. Weems, under the circumstances she herself so testified to, had nothing whatever to do to avoid this collision, except to either keep on going straight ahead in the northwesterly direction she was pursuing "not very fast" at the time of her discovery of appellant's peril, or to turn slightly toward the shoulder of the road to her right, from which she said she had just come, either of which movements, in a moment of time, would have prevented the accident.

In other words, however exacting the doctrine of discovered peril is, and however vital, crucial, or controlling the time element in it may be, it necessarily varies with the actual circumstances of each particular case; so here, under the uncomplicated and simple procedures of these two parties, as so detailed by this testimony, there was no such shut-out condition as appeared, supra, either in the Morgan case, or in Surkey v. Smith, Tex.Civ.App., 136 S.W.2d 893, or in Texas Pac. Coal & Oil Co. v. Wells, Tex.Civ.App., 151 S.W.2d 927, or in Parks v. Airline Motor Coaches, Tex. Sup., 193 S.W.2d 967, of no appreciable time within which to do anything; because, under Mrs. Weems's own frank statements, she had nothing at all to do, except to go on in her same direction, or to turn slightly to the right toward the shoulder, without even slowing down, either of which exertions, in plain common sense and reasonable inference, she could have exercised on her own, almost within the batting of an eye, in complete safety to herself, her car, and to the peril of nobody. This further, because the wide, flat safe shoulder of the road lay ahead and to the right of her, not only with no obstructions in her way,

but also, as the photographs all showed, with a helpful curve in it, and the highway toward the northwest.

So that, it is held by this Court that this cause is not ruled by the cases so relied upon by the appellee; but, rather, that it comes within the more nearly analogous facts presented by these authorities, cited and relied upon by the appellant, to-wit: East Texas Theatres v. Swink, 142 Tex. 268, 177 S.W.2d 195, 197; South Texas, etc., v. Eastland, Tex.Civ.App., 101 S.W. 2d 878; Short v. Nehi Bottling Co., Tex. Civ.App., 145 S.W.2d 684; Southland Greyhound Lines v. Richards, Tex.Civ. App., 77 S.W.2d 272, (Writ dismissed); International-G. N. Ry. Co. v. Acker, Tex. Civ.App., 128 S.W.2d 506 (Writ Dismissed, judgment correct); Galveston, H. & S. A. Ry. Co. v. Wagner, Tex.Com.App., 298 S. W. 552.

Finally, it was of no moment whatever that the appellant may have been guilty of contributory-negligence in getting over on his wrong side of the road, or, as the appellee suggests he did do, that he testified both vehicles were on their respective proper sides of the road as they approached one another, and that in fact, the front ends of the two vehicles passed each other safely; in other words, as against intervention of the claim of discovered peril, no negligence of his, wherever he was, had any material connection with the happening of this accident, except as it may have imposed upon the appellee the duty not to run him down, however negligent he may have been. 3 Tex. Jur., Negligence, page 684, Par. 35, and authorities cited in footnote 6.

These conclusions render a discussion of the other questions presented in the briefs supererogatory, wherefore, it will not be indulged; they also require a reversal of the appealed-judgment, and a remanding of the cause for another trial. It will be so ordered.

Reversed and remanded.