Charles S. BLOOD et al., Appellants,

v.

PATCO LUMBER COMPANY, Appellee.

No. 15661.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 8, 1971.

Rehearing Denied May 6, 1971.

Nagle & Barr, David J. Nagle, Houston,
for appellants.

Robert J. Malinak, Theodore F. Weiss,
Jr., Houston, for appellee; Baker & Botts,
Houston, of counsel.

BELL, Chief Justice.

This is a suit for damages resulting from
the death of Mr. and Mrs. Paul E. Lind-
berg who were killed in a truck and auto-
mobile accident. Charles S. Blood, the
paternal grandfather, sued as next friend
of the minor child, Anthony Charles Blood,
the son by a former marriage of Mrs. Lind-
berg. Jo Ann Lindberg Patterson, the
mother of the minor children, Paul Lind-
berg, Jr., Joseph Rex Lindberg and Pamela
Jo Ann Lindberg, her minor children born
to her marriage with Paul E. Lindberg,
sued as their next friend. The defendants
were Patco Lumber Company and Melvin
Zwahr. The suit against Zwahr was set-
tled by an agreed judgment after a sever-
ance. After a jury verdict favorable to
appellee on the issue of negligence, the
court rendered judgment that plaintiffs
take nothing against Patco.

Mr. and Mrs. Lindberg were passengers
in an automobile driven by Thomas Paler-
mo in a westerly direction on Farm Road
1462. His automobile, a 1963 Oldsmobile,
was in collision with a truck belonging to
Patco which was loaded with lumber and
which was being driven by Patco's agent,
William Cofield. Palermo was not a party
to the suit.

The appellants plead various specific
acts of negligence on the part of Cofield
and also discovered peril. The appellee's
answer is not in the transcript. However,
an unchallenged statement in appellee's

brief is that no contention has been made that either of the deceased was guilty of negligence. Too, no issues on their negligence were submitted to the jury.

The jury, in response to issues of primary negligence, ·asserted against Cofield, answered as follows:

1. Failed to find that after Cofield saw Palermo's Oldsmobile on the wrong side of the road he failed to make such application of the brakes as a person of ordinary care would have made.

2. Failed to find that after Cofield first saw Palermo's vehicle on the wrong side of the road he operated the truck at a greater rate of speed than a person of ordinary care would have done.

3. Failed to find that Cofield, on the occasion in question, failed to swerve the truck as a person of ordinary care would have done.

4. Found that Palermo drove his automobile at a rate of speed in excess of that which would have been driven by a person of ordinary care.

5. Failed to find that such act of Palermo was the sole proximate cause of the collision.

6. Failed to find that Zwahr backed his car from the Bergen driveway onto the highway.

Appellants requested the court to submit issues on discovered peril and presented properly worded issues encompassing such theory. The court refused.

Appellee's theory is that discovered peril was not raised because: (1) there was no contention and no evidence that Mr. or Mrs. Lindberg were guilty of any act of contributory negligence nor was any imputable to either of them and the doctrine of discovered peril is not applicable unless some negligent act of plaintiffs, or those from whom they derive their cause of action, placed the injured party in a perilous position; (2) discovered peril was not raised by the evidence because the evidence shows conclusively appellee's driver could do nothing after the deceased persons were in a perilous position to avoid the collision, or, what is a variation of this, that the driver had no last clear chance; and (3) the primary negligence issues submitted in effect covered the theory of discovered peril.

The evidence shows that Palermo was driving his Oldsmobile west on the highway about 4 o'clock on the afternoon of November 27, 1966. It was a clear day and he was facing the sun, though he says he had his sun visor down to protect his eyes. Cofield was driving east on the highway. The highway was paved with asphalt, the paving being 20 feet in width. There are wide gently sloping shoulders on either side. They were made of shell and were covered with grass. The surrounding country was flat. The road runs almost due east and west and for some substantial distance east and west it is straight.

Palermo testified he was driving 70 miles per hour which is the speed limit. As he was driving west a pickup truck backed out of a driveway to his right and he swerved to his left to miss it. He then pulled back to the right and the vehicle started to skid. The last thing he remembered was trying to turn his car to the right and saw a flash. It seemed like a dot. From the time he saw the truck until the collision was about two seconds. He was then skidding in the middle of the road. He could not estimate the speed of the truck. He wasn't going very fast. He was on the wrong side of the road at the time of the collision. His car crossed the center stripe three times before the collision. From the time it first crossed until the impact was five or six seconds. When he first swerved left the left front wheel went on the south shoulder and caught on the shoulder. He estimated his car traveled 300 feet from the time he first swerved until the collision. After the collision the truck and car ended up 30 or 40 feet south of the pavement.

Melvin Zwahr testified he was in his pickup in the driveway at Johnny Bergen's house on the north side of the highway. He saw the collision. He heard a sound and looked west and saw the Oldsmobile sliding north toward its lane. The car was facing northwest. He thought it was going into the ditch. It was sliding. Just before getting to the ditch the car headed south. It was in a spin. It was, however, sliding west. It all happened in two or three seconds. He did not see the truck until after the collision. He had turned into the driveway, coming from the west, and had been there about 20 seconds before he saw the car. He did not see it when he turned into the driveway. At the time of impact he thought the truck was right in its lane. He didn't know whether the truck tried to swerve. The skid marks made started west of his pickup. Between the time his head "flew west" and he saw the Oldsmobile until the collision was about two seconds. When he first saw the car it was going 70 or 80 miles per hour. He had no idea of its speed at the time of impact. He thought the car was going into the ditch on the north side just before it swerved back to the south just before the collision.

Mr. Bergen testified he first saw the car when it was just about in back of the pickup. It was skidding across the road headed north. It was on the wrong side of the road (south) and coming back to the north. When it started to the north it was headed toward the ditch. He thought it was going into the ditch. It then swerved left and hit the truck. He could not give the speed of the car. The skidding of the car had to slow it but he couldn't say how much. You could hear the sound of the tires as they were sliding. At impact the truck was not off the highway. The car took the truck off the highway into the ditch on the south. When he first saw the car it was traveling at a tremendously high rate of speed. When it hit the truck it was sliding sideways. The left front fender and headlight came in contact with the car. When he first saw the car it was going over 70 miles per hour. It was going near that when it hit the truck.

Perry Lewis was riding in the truck with Mr. Cofield. They were coming back from a job at Lake Jackson. As they were traveling along he was eating pecans. He heard Mr. Cofield say "look out". He looked up and saw the car. It was zigzagging across the road. Cofield "came down to a real slow speed and pulled off to the right side to the ditch." The car, when he first saw it, was going to the right side. It went to the ditch and then came back and hit the truck. The car never slowed down. At the time of impact the truck was going 15 or 20 miles per hour. When the collision occurred the two left wheels of the truck were about 3 feet on the road. Cofield did not put the brakes on when he said "look out".

William Cofield testified he was traveling 45 or 50 miles per hour just prior to his seeing the car. He first saw the car when it "ducked" out from behind the pickup. He was then five or six hundred feet away. The back end of the car went off the road on the south and in a split second came back to the opposite side. When the driver of the car got back to the north side it looked like he was going to keep straight or go in the ditch. In a split second he came back to the south and hit the truck. The car was traveling at a high rate of speed. When the car came from the south to the north it was "in kind of a sideways". When he first saw the car he took his foot off the accelerator and reduced his speed. He didn't put on the brakes because he didn't know what the car was going to do. It looked like the car was going into the ditch. All of a sudden the car turned and came back and hit the truck. From the time the car last turned to the south until the collision was about a second. When the car started south the last time he slammed on the brakes. The right side of the car hit the left front wheel and bumper of the truck. The truck was then going 15 or 20 miles per hour. If the car had slowed since he first saw it, it "was a mighty little

bit." From the time the car first ducked out until the collision was four or five seconds at the most. The car was out of control when he first saw it and continued to be to the time of impact. He didn't earlier put on his brakes because the angle of the car on the north side made him think the car was going in the ditch. He was waiting to see if control would be regained.

Mr. Hulon Baggett, the highway patrolman, made an investigation of the accident. There were clearly discernible skid marks. From the beginning of the marks made by the car to where Palermo first went off the pavement to the shoulder on the south was 184 feet. The distance until he got back on the pavement was 119 feet. The distance back to the north to where he again got off the pavement was 125 feet. He was off the pavement on the north for 61 feet 9 inches. The Oldsmobile then cut back to the south and traveled 79 feet to the point of impact. When the car first skidded to the left it made a semicircle. The left tires went off the pavement. It appeared that they "skidded" through the gravel. The officer said he assumed the darker skid marks were made when the driver applied his brakes harder. The car was out of control from the time it entered the south side of the highway. The truck left 39 feet 6 inches of skid mark. It appeared to be made by the left front tire. The other tires on the truck left no skid marks. He estimated the car was going between 30 and 40 miles per hour at the time of impact. The truck was going 15 or 20 miles per hour. The truck driver seemed to be swerving to his right because the skid mark angled in that direction. The witness was of the opinion, based on his investigation, that the Oldsmobile, at the beginning of its maneuver, was going 80 to 90 miles per hour. During the maneuver the speed was cut some but not to any great extent.

While appellants have assigned three points of error, they present only the question whether under the facts of this case the trial court erred in not submitting the requested issues on discovered peril.

We conclude that he did not.

An analysis of the above recited facts leads to the conclusion that there is no evidence from which one can reasonably conclude that Cofield had a last clear chance. To charge liability under the doctrine of discovered peril there must exist a clear chance to avoid injury which could have been reasonably perceived by the party sought to be held. R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422; Terry v. English, 130 Tex. 632, 112 S.W.2d 446; Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Morreale v. Cohen, 158 Tex. 291, 310 S.W.2d 737, and Welch v. Ada Oil Co., Tex.Civ.App., 302 S.W.2d 175, writ ref., n. r. e.

Under the facts of this case Cofield could only guess that to have earlier taken to the shoulder and stopped would be a safe place for his vehicle and that he could thus avoid the oncoming car. From the standpoint of appearances the movement of the Oldsmobile was wholly unpredictable. From Cofield's standpoint, considering the movement of the car just before the accident, it would be entirely reasonable to apprehend that the vehicle would continue in its northwesterly course and go off into the ditch on the north side. Appellants argue that had Cofield pulled to the side of the road and stopped when he first saw the car on the south side of the road, the car, when it last turned to the south side of the road, would not have hit the truck but would have continued into the ditch. Even assuming that the truck could have pulled to the side of the road and stopped, any conclusion that the car would continue into the ditch on the south would be pure speculation. Previous to the last turn to the south the car was headed to a ditch, once on the north side and once on the south side. On neither occasion did the driver control his vehicle so as to go into the ditch.

Further, we are of the opinion that discovered peril was not raised because the pleading and evidence did not raise an issue of contributory negligence on the part of the deceased persons by reason of any act or omission on their part, or through imputation.

While no case cited us has expressly held this, and in our search we have found none, the cases do state that one of the conditions that shall exist before discovered peril is raised is contributory negligence. In the absence of contributory negligence, liability is determined alone by primary negligence on the part of the defendant which is a proximate cause. There is no need to excuse contributory negligence of a party if no issue is raised by the pleading and evidence.

In the case of Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, our Supreme Court stated that one of the elements of discovered peril was that the exposed position was brought about by the negligence of the plaintiff. Also see East Texas Theatres v. Swink, 142 Tex. 268, 177 S.W. 2d 195; Martin v. Texas & N. O. R. Co., Tex.Civ.App., 236 S.W.2d 567, writ ref.; Burlington-Rock Island R. Co. et al. v. Pruitt et al., Tex.Civ.App., 160 S.W.2d 105, writ ref. All of these cited cases state the same required element of contributory negligence by the plaintiff before discovered peril is involved.

In Section 479, Restatement of The Law of Torts, Second Edition, it is assumed that this element is necessary. In the comment on clause (a) this is stated: "The rule stated in this Section is applicable only when the plaintiff has negligently placed himself in a position of peril. * * *"

In Prosser on Law of Torts, 2nd Edition, Section 52, pages 293–294, it is stated that "where a plaintiff's prior negligence has placed him in a position from which he is powerless to extricate himself * * * and the defendant discovers his danger while there is still time to avoid it, * * * the plaintiff may recover."

In Vol. 65A Negligence C.J.S. § 136(1), p. 122, it is stated that "the doctrine presupposes a perilous situation created or existing through the negligence of both parties, * * *."

The effect of the doctrine of discovered peril is to prevent a tort feasor from escaping liability for the consequences of his primary negligence even though the injured party be guilty of contributory negligence. It is regarded as a limitation of, or exception to the general rule of contributory negligence. It presupposes negligence by the plaintiff. Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610; Texas Pacific Coal and Oil Co. v. Wells, Tex.Civ.App., 151 S.W.2d 927, aff'd 140 Tex. 2, 164 S.W.2d 660.

We do not mean, of course, that contributory negligence must exist as a matter of law or there must be a fact finding of contributory negligence. Obviously in a case tried to a jury it will not be known until after verdict whether it is found as a fact. What we hold is that if contributory negligence on the part of plaintiff is raised by the pleading and evidence so that the defendant would be entitled to a submission of issues on such to the jury, discovered peril may be raised even though no contributory negligence is in fact submitted to the jury. If, however, the pleadings and evidence do not raise an issue of contributory negligence, the doctrine of discovered peril is not applicable.

There have been, and will be, cases where discovered peril alone is submitted to the jury. There will be cases where, though the pleading and evidence raise the issue of contributory negligence, plaintiff elects to waive liability on the ground of primary negligence.

The case was submitted on primary negligence on the part of the defendant. If appellants did not cover all issues, the burden was on them to submit in substantially correct wording the issues desired. This they did not do and thus waived submission. Rule 279, Texas Rules of Civil Procedure.

Affirmed.