**Opinion issued June 16, 2026.**



In the

# Court of Appeals

for the

# First District of Texas

_____

### NO. 01-23-00900-CV

_____

### UNION PACIFIC RAILROAD COMPANY, Appellant

### v.

### MARY JOHNSON, Appellee

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-80991**

## OPINION

A train owned by appellant Union Pacific Railroad Company (UPRC) struck and severely injured appellee pedestrian Mary Johnson. At trial, a jury awarded Johnson actual and exemplary damages. We reverse the trial court's judgment and remand for a new trial because, despite Johnson's status as a trespasser on UPRC's

tracks, the trial court's charge improperly permitted the jury to determine UPRC's liability and apportion responsibility between the parties based on UPRC's ordinary rather than gross negligence.

**Background**

Sometime during the night of March 4, 2016, or very early in the morning of March 5, 2016, Johnson sat down on railroad tracks located on the north side of downtown Houston and fell asleep in a seated position. Johnson fell asleep roughly 47 feet from a Lyons Avenue railroad crossing. Johnson was present on the tracks without the permission of owner UPRC.[1]

Not long after 2:30 a.m. on the morning of March 5, 2016, a UPRC freight train traveling at 19 miles per hour approached, from the other side of the Lyons Avenue railroad crossing, the location where Johnson was sleeping on the tracks. As the train approached the crossing, the crossing gates descended, accompanied by flashing lights and ringing bells. In addition, the train's crew began the long sounding of the train's horn required when approaching a crossing.

According to the testimony of the train's conductor and engineer, at around that time, the crew first spotted ahead on the tracks an obstacle they could not

---

[1] In their respective briefs on appeal, UPRC asserts and Johnson does not dispute that UPRC owns the tracks. *See W. Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006) ("An appellate court normally accepts as true the facts stated in an appellate brief unless the opposing party contradicts them."). Johnson acknowledged at trial that she had not asked permission to be at the location where she was injured or otherwise notified UPRC that she would be there.

immediately identify. Johnson had not moved from the tracks. According to his trial testimony, the train's engineer then began sounding the train's horn in rapid bursts as a warning. The train engineer testified that, once he identified the obstacle as a person, he engaged the train's emergency brake. Seconds later, the train struck Johnson.

Moving at 19 miles per hour, the train required 417 feet—i.e., over the length of a football field—to stop once the emergency brake was engaged. The parties dispute whether, had the engineer engaged the emergency brake when the crew first spotted an obstacle on the tracks, the train could have stopped before hitting Johnson.

The impact severely injured Johnson. Medics transported Johnson to a hospital, where she was placed in a medically induced coma. A blood sample taken from Johnson at the hospital at 3:35 a.m., the morning of March 5, 2016, showed what a UPRC expert testified was a blood-alcohol concentration of around 0.197. Johnson testified at trial that she "woke up" from her coma one and a half months after she was injured.

In November 2016, Johnson filed suit against a bar where she had spent time the evening of March 4, 2016, claiming in her lawsuit that the bar had served her alcohol when she "was obviously intoxicated and presented a clear danger to herself and others." In February 2018, Johnson amended her petition to add UPRC

as a defendant. After the trial court granted a motion for summary judgment in favor of the bar, the case proceeded to trial solely against UPRC. The jury trial was bifurcated.

After applying the jury's proportionate responsibility finding and the statutory cap on exemplary damages, and adding prejudgment interest, the trial court entered a judgment awarding Johnson $73,470,977.40 plus post-judgment interest. UPRC appealed the judgment. On appeal, UPRC argues in part that the trial court's instructions to the jury were erroneous because they did not reference what UPRC argues are legal limitations on a train crew's duty when it discovers a person on the tracks and improperly permitted the jury to determine UPRC's liability and apportion responsibility between the parties based on UPRC's ordinary rather than gross negligence.

## Legal Duty Owed to Trespasser

We address first the question of what, if any, legal duty UPRC owed Johnson as a trespasser.[2] In a negligence case, the threshold question is whether the defendant owes a legal duty to the plaintiff. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam). Generally, the only duty a premises owner owes a trespasser is not to injure the trespasser willfully, wantonly, or through gross

---

[2] Under section 75.007(a) of the Texas Civil Practice and Remedies Code, a trespasser is "a person who enters the land of another without any legal right, express or implied."

negligence. *Id*. at 311 (citing *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997)). Section 75.007(b) of the Texas Civil Practice and Remedies Code, which was adopted in 2011, codified that "well-established" common-law rule. *Id*. at 310-11 & n.3. Section 75.007(b) of the Texas Civil Practice and Remedies Code states: "An owner . . . of land does not owe a duty of care to a trespasser on the land and is not liable for any injury to a trespasser on the land, except that [the owner] owes a duty to refrain from injuring a trespasser [willfully], wantonly, or through gross negligence."

Johnson argues that, "[u]nder its plain text, Chapter 75 applies 'only to' landowners permitting the 'recreational use' of their premises." Chapter 75 is sometimes referred to as the "recreational-use statute," but section 75.007(b) makes no reference to recreation. Section 75.003(c) states that chapter 75 applies "only to" certain types of real-property owner *including* a non-governmental real-property owner who (1) "does not charge for entry to the premises" or (2) "charges for entry to the premises, but whose total charges collected in the previous calendar year for all recreational use of the entire premises" does not exceed a certain amount. Johnson does not explain how section 75.003(c) can be read as limiting the application of chapter 75 to landowners permitting the recreational use of their premises. In any case, we do not need to resolve the question of the scope of chapter 75 because, as discussed below, the common-law

5

rule codified by section 75.007(b) continues to be applied without any recreational-use limitation.

There is no long line of case law applying the common-law rule in cases involving trespassers injured by trains because, prior to the adoption of comparative negligence, a trespasser's contributory negligence was a general bar to recovery. The Texas Supreme Court explained in 1919:

> The true rule is that it is the duty of the servants of the railroad company operating its trains to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured, or of the person seeking to recover for such injury, and the circumstances under which the party injured went upon the track are merely evidence upon the issue of contributory negligence. If such circumstances show that the party injured was a wrongdoer or trespasser at the time of the injury, the issue of contributory negligence is, as a general rule, established as a matter of law; but not so in all cases. It results from the above, that it was the duty of the railroad to use ordinary or reasonable care to discover and warn defendant in error, whether she be considered a trespasser or a mere licensee, and a failure to use such care was negligence, rendering the railroad liable for such damages as resulted therefrom, unless under all the circumstances defendant in error was guilty of negligence contributing proximately to her injury.

*St. Louis Sw. Ry. v. Watts*, 216 S.W. 391, 392 (Tex. 1919) (quoting *Tex. & Pac. Ry. v. Watkins*, 29 S.W. 232, 233-34 (Tex. 1895)); *see also Berry v. Union Pac. R.R.*, No. CV H-22-331, 2023 WL 3819372, at *7 (S.D. Tex. June 5, 2023) (noting that, under *Watkins*, "a plaintiff's status as a trespasser likely precluded liability as a

matter of law under the rule of contributory negligence," but that "Texas has since abolished the strict rule of contributory negligence"), *appeal dismissed*, No. 23-20330, 2024 WL 3355359 (5th Cir. May 21, 2024).

In cases involving injury to a contributorily negligent trespasser, a railroad could still be liable to the trespasser under the doctrine of discovered peril, also known as the "last clear chance" doctrine. *See Tex. & New Orleans R.R. v. Krasoff*, 191 S.W.2d 1, 3 (Tex. 1945) (noting that, "[a]s the jury had found [the plaintiff] guilty of contributory negligence, the issue of discovered peril thus became the sole basis of liability"); *see also Sisti v. Thompson*, 229 S.W.2d 610, 615 (Tex. 1950) (noting that doctrine of discovered peril is also known as "last clear chance" doctrine). Under that doctrine, a railroad could be held liable to a trespasser whose "exposed condition" was brought about by the trespasser's own negligence if the train crew actually discovered the trespasser's "perilous situation" in time to avoid injuring the trespasser "by use of all the means at their command, commensurate with their own safety," and yet failed to do so. *Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88, 94 (Tex. App.—Corpus Christi 1976, writ ref'd n.r.e.) (citing *E. Tex. Theaters v. Swink*, 177 S.W.2d 195, 197 (Tex. 1944)).

The doctrine of discovered peril was abolished by the Texas Supreme Court in 1978, as part of its rejection of "doctrines directed to the old choice between total victory and total defeat for the injured plaintiff," in favor of a general

7

submission of comparative negligence. *See Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 560 (Tex. 2015) (quoting *French v. Grigsby*, 571 S.W.2d 867, 867 (Tex. 1978) (abolishing doctrine of discovered peril)).

But while the adoption of comparative negligence and rejection of the discovered peril doctrine altered what law applies to cases involving injury to a trespasser, those developments did not impact the application of the common-law rule that a landowner's only duty to a trespasser is to refrain from injuring the trespasser willfully, wantonly, or through gross negligence—or its codification in section 75.007(b). *See Rico v. Flores*, 481 F.3d 234, 242 (5th Cir. 2007) ("Texas courts have repeatedly held that a landowner owes a duty to a trespasser to refrain from injuring the trespasser willfully, wantonly, or through gross negligence." (citation modified)); *Lechuga v. S. Pac. Transp. Co*., 949 F.2d 790, 794 (5th Cir. 1992) ("The [occupant's] duty of care to a licensee or trespasser is merely not to injure him willfully, wantonly, or through gross negligence."); *Denman v. Wilhoit Props., Inc*., No. CV H-23-3029, 2025 WL 2430499, at \*2 (S.D. Tex. Aug. 22, 2025) ("[T]he only duty owed by a property owner to a trespasser is not to injure him [willfully], wantonly, or through gross negligence." (citation modified)); *Boerjan*, 436 S.W.3d at 310-11 (noting that only duty premises owner owes a trespasser is not to injure trespasser willfully, wantonly, or through gross negligence); *Ngetich v. Breda*, No. 01-21-00502-CV, 2022 WL 4349327, at \*4

8

(Tex. App.—Houston [1st Dist.] Sept. 20, 2022, no pet.) (mem. op.) ("The only duty a premises owner or occupier owes a trespasser is not to injure him willfully, wantonly, or through gross negligence." (citation modified)).

Texas courts have held that the common-law rule or section 75.007(b) applies to negligence claims and not just to premises liability claims. *See Berry*, 2023 WL 3819372, at \*5 (holding that Texas rule limiting railroad's duty to trespassers applies in negligence cases to same extent as premises liability cases (citing *Boerjan*, 436 S.W.3d at 311)); *Boerjan*, 436 S.W.3d at 310-11 (holding that ordinary negligence claim brought by trespasser against ranch owner failed as matter of law under "well-established rule" that "only duty the premises owner or occupier owes a trespasser is not to injure him [willfully], wantonly, or through gross negligence"); *Meredith v. Chezem ex rel. Chezem*, No. 03-18-00256-CV, 2018 WL 6425017, at \*3 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op.) (holding that section 75.007(b) "applies to [plaintiff's] claims based on negligent acts or omissions, so long as the claims otherwise fall within the scope of the statute"); *see also Barnes v. Kansas City S. Ry.*, No. 4:14-CV-68, 2016 WL 4801511, at \*2-5 (S.D. Tex. Feb. 19, 2016) (holding that claim by trespasser plaintiffs that railroad was negligent, including for failing to keep proper lookout, failed because railroad owed plaintiffs "no greater duty . . . than to abstain from willfully wanton or grossly negligent conduct" and evidence showed railroad and

its crew were not negligent in operation of train); *Arreola v. Union Pac. R.R.*, 657 S.W.3d 789, 800 n.3 (Tex. App.—El Paso 2022, no pet.) (noting that train crew's general duty to behave reasonably when it discovers person on tracks may not apply if person is trespasser, citing *Barnes*, 2016 WL 4801511, at *4).

No Texas state court has yet ruled, as the federal court did in *Berry*, that a railroad's duty to trespassers applies in negligence cases to same extent as premises liability cases. But we share the federal court's view that Texas state-court decisions compel that conclusion. We thus conclude that the only duty owed by UPRC to Johnson, a trespasser, was to refrain from injuring her willfully, wantonly, or through gross negligence.

## Jury Charge

UPRC claims that the trial court in its charge erroneously failed to instruct the jury on the specific duty owed by train crews under the applicable law and permitted the jury to find UPRC liable based solely on ordinary negligence, resulting in improper findings on liability and apportionment of responsibility. We review the trial court's decisions to submit and refuse particular instructions for an abuse of discretion. *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018); *FMC Techs., Inc. v. Murphy*, 679 S.W.3d 788, 812 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

The trial court submitted liability to the jury under an ordinary-negligence standard, overruling UPRC's objection and requested instruction that, because Johnson was a trespasser, UPRC could be held liable only for its gross negligence. The court also overruled UPRC's objection and requested instruction that train crews owe no duty to brake until it becomes apparent that an object on the tracks is a person who, despite receiving warning, will not move to safety.

In the first phase of the trial court's bifurcated trial, the jury charge included four questions. In Question No. 1, the trial court asked the jury: "Did the negligence, if any, of those named below [UPRC and Johnson] proximately cause the injury in question?" The trial court defined "negligence" as "failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." The trial court defined "ordinary care" as "that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances." The trial court also gave the jury the following instruction, along with a definition of "proximate cause":

> If a person is confronted by an "emergency" arising suddenly and
> unexpectedly, which was not proximately caused by any negligence
> on his part and which, to a reasonable person, requires immediate
> action without time for deliberation, his conduct in such an emergency
> is not negligence or failure to use ordinary care if, after such

11

emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

In response to Question No. 1, asking whether "the negligence, if any, of those named below [UPRC and Johnson] proximately cause[d] the injury in question," the jury answered "yes" for both UPRC and Johnson.

The trial court instructed the jury to answer Question No. 2, regarding apportionment of responsibility, only if it had found that the injury in question was proximately caused by the negligence of both UPRC and Johnson. In Question No. 2, the trial court asked the jury, "[f]or each person you found caused or contributed to cause the occurrence," to "find the percentage of responsibility attributable to each." The trial court instructed the jury:

Assign percentages of responsibility only to those you found caused or contributed to cause the occurrence. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

The jury found responsibility for the "occurrence" to be 80% attributable to UPRC and 20% attributable to Johnson.

The trial court instructed the jury to answer Question No. 3, regarding damages, only if (1) it had answered "yes" for UPRC in Question No. 1, which asked if the ordinary negligence of UPRC, Johnson, or both proximately caused the injury in question; and (2) it had answered "no" for Johnson in response to

12

Question No. 1 or 50% or less for Johnson in response to Question No. 2. In Question No. 3, the trial court asked the jury: "What sum of money, if paid now in cash, would fairly and reasonably compensate Mary Johnson for her injuries, if any, that resulted from the occurrence in question?" In response, the jury awarded Johnson $9,606,000 in economic damages and $47.5 million in non-economic damages.

The trial court instructed the jury to answer Question No. 4, regarding gross negligence, only if it had answered Question No. 3, regarding damages. In Question No. 4, as a predicate for any award of punitive damages, the trial court asked the jury whether it found by clear and convincing evidence that any harm it had found to Johnson resulted from gross negligence attributable to UPRC. Question No. 4 included a definition of "clear and convincing evidence" and "gross negligence." The trial court instructed the jury on circumstances under which it could find UPRC grossly negligent based on the act of the train's engineer, the train's conductor, a vice-principal of UPRC, or a UPRC employee acting in a managerial capacity. In response to Question No. 4, the jury found UPRC grossly negligent. In the bifurcated trial's second phase, the jury awarded Johnson $500 million in exemplary damages.

## A.    Discovered Peril Doctrine

UPRC argues that the trial court erroneously instructed the jury to assess negligence under a "generic 'ordinary prudence'" standard, without referencing legal limitations on a train crew's duty when it discovers a person on the tracks. That error, UPRC contends, permitted the jury to make its liability finding and apportion responsibility based on invalid theories of liability.

Specifically, UPRC argues that the trial court erred in part by refusing to instruct the jury that a train crew has a limited duty to a person it observes on the tracks once it has timely warned the person to leave the tracks. At trial, UPRC objected to the trial court's Question No. 1 and requested the following instruction:

> When a train's crew discovers a person on railroad tracks, and it gives a timely warning, the crew can presume that the person will leave the tracks to avoid a collision. The crew need not stop or slow the train until it is apparent that the person is unaware of the train's approach or unable to move.

The trial court refused the proposed instruction.

UPRC argues on appeal that its requested instruction accurately reflects Texas law under decisions such as *Sisti v. Thompson*, 229 S.W.2d 610 (Tex. 1950), *Barnes v. Kansas City Southern Railway*, No. 4:14-CV-68, 2016 WL 4801511 (S.D. Tex. Feb. 19, 2016), and *Arreola v. Union Pacific Railroad*, 657 S.W.3d 789 (Tex. App.—El Paso 2022, no pet.). Johnson argues that UPRC is relying on case

14

law decided under or linked to the discovered peril doctrine that, since the Texas Supreme Court's abolition of that doctrine, is no longer good law.

We agree with Johnson. The Texas Supreme Court defined the doctrine of discovered peril as involving three elements: "(1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendant's agents of his perilous situation in time to have averted—by the use of all the means at their command, commensurate with their own safety—injury to him; and (3) the failure thereafter to use such means." *E. Tex. Theaters v. Swink*, 177 S.W.2d 195, 196-97 (Tex. 1944). In the case law on which UPRC relies, Texas courts applied the doctrine of discovered peril to narrowly define the circumstances under which a train crew is reasonably required to stop a train based on the observation of an object on the track. *See, e.g.*, *San Antonio & Aransas Pass Ry. v. McMillan*, 102 S.W. 103, 104 (Tex. 1907) ("In applying the doctrine of discovered peril, the railroad company cannot be held liable because the servant was negligent in failing to discover the person, or in failing to recognize his peril; but it must appear from the evidence that the servant actually saw the man, realized his peril, and that he would not get off the track. . . . It must, also, appear that the discovery of the peril was in time for the trainmen by the use of the means at hand to stop the train before coming in collision with the man."); *Sisti*, 229 S.W.2d at 615 (noting that, under doctrine of discovered peril, "where one is discovered some distance ahead

15

of a train, and a timely warning is given, those in charge of the train can presume that such a person is in possession of all his faculties and that prompted by instinct of self-preservation, he will leave the track and place himself beyond the reach of danger in time to escape injury, and are not bound to stop or check the train, unless and until the circumstances make it apparent that the person is unaware of its approach, or is unable to extricate himself from the dangerous position" (citation modified)); *Arreola*, 657 S.W.3d at 800-01 (holding that train crew did not act unreasonably in circumstances at issue, noting Texas Supreme Court's statement in *Sisti* that, "where one is discovered some distance ahead of a train, and a timely warning is given, those in charge of the train can presume that such a person is in possession of all his faculties and that prompted by instinct of self-preservation, he will leave the track and place himself beyond the reach of danger in time to escape injury" (citing *Barnes*, 2016 WL 4801511, at *4; *Sisti*, 229 S.W.2d at 615) (citation modified)).

The decisions in *Barnes* and *Arreola* post-date the Texas Supreme Court's abolition of the discovered peril doctrine, but both the federal district court in *Barnes* and state appellate court in *Arreola* were applying the discovered peril doctrine in the portions of those opinions on which UPRC relies. In neither case does the court address the supreme court's abolition of the discovered peril doctrine, and it is possible the doctrine was applied by consent or waiver. For

example, in *Arreola*, the El Paso court of appeals applied the doctrine of discovered peril in holding that sufficient evidence supported the jury's finding that a teenager killed by a train while walking on train tracks wearing headphones was 90% at fault for the accident. 657 S.W.3d at 800-04. But in doing so, the court of appeals noted that it was measuring the sufficiency of the evidence based on the jury instructions as given, that the trial court had not instructed the jury that the teenager was a trespasser, and that the train crew's duty "might be different for a person trespassing on train tracks." *Id.* at 800 n.3.

UPRC asserts that the "*Sisti* rule" survived the supreme court's abolition of the discovered peril doctrine. However, as the Texas Supreme Court itself stated in *Sisti*, that case was "submitted to the jury by the court upon the theory of discovered peril, . . . which was the only basis of recovery alleged and presented to the jury." *Sisti*, 229 S.W.2d at 612. Whatever use the courts in *Barnes* and *Arreola* made of the doctrine of discovered peril, it does not apply here. Here, the trial court properly rejected UPRC's proposed instruction under the discovered peril doctrine.

## B.    Negligence Standard

UPRC argues that the trial court erroneously instructed the jury to make its liability finding in response to Question No. 1 based on UPRC's ordinary rather than gross negligence and, as a consequence, apportion responsibility in response

to Question No. 2 based on a comparison of UPRC's and Johnson's respective ordinary negligence rather than a comparison of UPRC's gross negligence and Johnson's ordinary negligence. UPRC claims that it is impossible to know what the jury would have responded regarding liability, apportionment, and damages had the trial court given the jury a correct charge. UPRC argues that the trial court's inclusion of Question No. 4 regarding gross negligence, as a predicate for any award of punitive damages, did not cure its error in instructing the jury to make its liability finding and apportion responsibility based on UPRC's ordinary negligence rather than gross negligence.

At the charge conference, UPRC objected to Question No. 1 as stating an "improper duty of care as to a trespasser by an occupant of land," arguing that, under section 75.007(b) of the Texas Civil Practice and Remedies Code, "the only duty owed to a trespasser is to refrain from injuring them willfully, wantonly, or through gross negligence." UPRC also submitted a proposed version of Question No. 1 in which the trial court did not ask the jury about ordinary negligence and, instead, asked the jury whether "the gross negligence, if any, of [UPRC] proximately cause the injury in question." UPRC's proposed version of Question No. 1 included an instruction on what constitutes grossly negligent conduct:

UPRC's proposed Question No. 1 stated in part:

Union Pacific was grossly negligent if its conduct was an act or omission—

18

a.  which, when viewed objectively from the standpoint of Union Pacific at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

b.  of which Union Pacific had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

UPRC's proposed Question No. 1 also included a definition of "proximate cause" and an instruction on the doctrine of discovered peril. The trial court overruled UPRC's objection and refused its requested written question.

Johnson argues on appeal that it is undisputed that UPRC's conduct could not have constituted gross negligence unless it first constituted ordinary negligence. *See Southcross Energy Partners GP, LLC v. Gonzalez*, 625 S.W.3d 869, 881 (Tex. App.—San Antonio 2021, no pet.) ("For an act or omission to constitute gross negligence, the act or omission complained of must first constitute ordinary negligence."). Johnson claims that UPRC's proposed Question No. 1 was not substantially correct because it did not define "ordinary negligence."[3] Johnson cites *Deligans v. Deligans*, No. 13-22-00449-CV, 2024 WL 1665683 (Tex. App.— Corpus Christi–Edinburg Apr. 18, 2024, pet. denied) (mem. op.), in which the court of appeals held that a trial court's failure to submit a jury question is not grounds for reversal "unless the party submitting it has requested it in

---

[3]  Johnson also argues that there was no error because section 75.007(b) does not apply here. As discussed above, however, even if Johnson is correct, the common-law rule codified by section 75.007(b) would still apply without any purported recreational-use limitation.

19

'substantially correct wording,'" and that "a request is not substantially correct if it contains a term that requires a definition but the party fails to tender the definition." *Id.* at \*16 (quoting TEX. R. CIV. P. 278).

However, UPRC's complaint on appeal is based, not just on the trial court's refusal of UPRC's proposed Question No. 1, but also on UPRC's objection at the charge conference that the trial court's Question No. 1 incorporated the wrong duty of care given Johnson's status as a trespasser. *See Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) ("[T]the procedural requirements for determining whether a party has preserved error in the jury charge are explained by one basic test: 'whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.'" (quoting *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992))). UPRC's objection, which the trial court overruled, timely and plainly made the trial court aware of UPRC's complaint. And even if UPRC were relying solely on the trial court's refusal of UPRC's proposed Question No. 1, that question included the definition of "gross negligence" employed in the pattern charge, which does not include a definition of "ordinary negligence." *See* State Bar of Tex., *Tex. Pattern Jury Charges—Gen. Negligence, Intentional Personal Torts & Workers' Compensation*, 4.2 (2022).

Johnson argues further that any error in the trial court's Question No. 1 was harmless because the train crew's conduct "readily satisfies the elements of gross

negligence." A judgment will not be reversed for charge error unless the error was harmful. *Glenn v. Leal*, 596 S.W.3d 769, 772 (Tex. 2020) (per curiam). Charge error is generally considered harmful if it relates to a "contested, critical issue." *Schindler Elevator Corp. v. Ceasar*, 670 S.W.3d 577, 587 (Tex. 2023) (citing cases); *Glenn*, 596 S.W.3d at 772.

The negligence standard to be applied by the jury was a contested issue: UPRC proposed an alternative submission incorporating the correct negligence standard and objected to the trial court's erroneous submission. In a negligence case, the negligence standard to be applied by the jury is a critical issue because it goes "to the very question the jury [is] tasked with answering to decide liability." *Glenn*, 596 S.W.3d at 772 (remanding for new trial based on trial court's erroneous instruction that jury apply ordinary negligence standard rather than willful and wanton negligence standard in determining liability, citing cases including *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) ("[W]here, as in the pending case, the theory of recovery was defectively submitted, as opposed to a situation where the plaintiff refused to submit a theory of liability after defendant's objection, the proper remedy is to remand for a new trial." (citation modified))). In this case, the negligence standard to be applied by the jury was a critical issue for the additional reason that the jury, in apportioning responsibility, was required to

compare Johnson's ordinary negligence, if any, and any relevant negligence by UPRC.

We thus sustain UPRC's point of error regarding the trial court's erroneous submission of ordinary negligence and refusal to instruct the jury to make its liability finding in response to Question No. 1 based on UPRC's gross negligence, if any. Having found harmful error in the jury charge, we reverse the trial court's judgment and remand the case to the trial court for a new trial. *See Glenn*, 596 S.W.3d at 772. ("When a trial court gives an erroneous charge that instructs the jury on the incorrect law applicable in the case, . . . a new trial is the appropriate remedy."). We do not address UPRC's remaining points of error, including its argument that insufficient evidence supported the jury's finding of gross negligence by UPRC. *See id*. at 770, 772 (remanding for new trial on grounds that trial court gave erroneous charge that instructed jury on incorrect negligence standard without consideration of appellant's challenge that there was legally insufficient evidence of negligence meeting correct negligence standard).

## Conclusion

The judgment against UPRC is reversed, and the case is remanded for additional proceedings consistent with this opinion.

22

Amparo "Amy" Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.